**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5059** |
| **NORANDA ALUMINA, LLC** | **SECTION: "G"(3)** |

## ORDER AND REASONS

This case is an union-employee dispute arising under Sections 301(a) and (c) of the Labor Management Relations Act of 1947 (LMRA). United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO ("USW") has brought suit in this Court to seek an order to compel arbitration against Defendant Noranda Alumina, LLC ("Noranda"). Before the Court is Noranda's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] wherein it seeks dismissal of the USW's single cause of action to compel arbitration under Sections 301(a) and (c) of the LMRA for failure to state a claim upon which relief can be granted. The Court has considered the complaint, the parties' respective briefs, the record, and the applicable law. For the reasons set forth below, the Court will deny the motion.

---

[1] Rec. Doc. 6.

# I. Background

## A. Factual Background

Plaintiff USW and Defendant Noranda are parties to a collective bargaining agreement that contains a standard grievance and arbitration provision.[2] On July 12, 2013, USW filed a complaint against Noranda, alleging that Noranda improperly refused to arbitrate a labor grievance brought by the USW on behalf of Kent Haydel, a former Noranda employee.[3] Haydel worked for Noranda until May 1, 2006, at which time he suffered a work-place injury.[4] He remained on workers' compensation from then until May 4, 2010.[5] As a result of his injuries, Haydel was never able to return to work, and he later applied for and received a disability retirement pension from Noranda.[6] The essence of the grievance USW brought on behalf of Haydel revolves around the number of years of pension service credit with which Noranda credited Haydel. Noranda credited Haydel with one year.[7] Noranda claims it properly calculated Haydel's monthly pension "based upon his total benefit service, meaning his years of active service with Noranda, plus one additional year" while Haydel was on workers' compensation.[8] It is USW's position that Noranda should have credited Haydel

---

[2] Rec. Doc. 6-2 at 2.

[3] *Id.*

[4] Rec. Doc. 1 at 4.

[5] Rec. Doc. 6-2 at 2.

[6] Rec. Doc. 1 at 2.

[7] *Id.* at 2–3.

[8] Rec. Doc. 6-2 at 2.

with pension service credit for all years in which he was on workers' compensation, i.e. that is four years.[9]

When Noranda and USW failed to resolve the matter, USW appealed the matter to arbitration.[10] Noranda refused to submit the matter to arbitration.[11]

### B. Procedural Background

Prior to the filing of this lawsuit by USW to compel arbitration, Noranda claims that it "provided numerous warnings to Plaintiff that the appropriate method for challenging Haydel's benefit determination was through the Plan appeal procedure,"[12] which will be discussed below. This is important because, under Section 301 of the LMRA, the statute under which USW has brought this action, a party only has 6 months from when the other party refuses to arbitrate the dispute to file a lawsuit to compel arbitration under a collective bargaining agreement.[13] Noranda claims that it first gave warning to USW that it would not arbitrate the dispute on April 4, 2012, when Noranda advised Plaintiff that "The Noranda Alumina LLC Hourly Employee Pension Plan ('Pension Plan' or 'Plan') document details the eligibility and benefits of the pension benefits."[14] Later, on February 1, 2013, Noranda contends that its counsel again advised USW that it would not arbitrate the dispute, telling USW that "any dispute concerning Plan benefits must be brought pursuant to Plan

---

[9]  Rec. Doc. 1 at 3.

[10]  *Id.*

[11]  *See id.*

[12]  Rec. Doc. 6-2 at 3.

[13]  *See Aluminum, Brick and Glass-Workers International Local 674 v. A.P. Green Refractories, Inc.*, 895 F.2d 1053, 1054–55 (5th Cir. 1990).

[14]  Rec. Doc. 6-2 at 3.

procedures."[15] Finally, on April 5, 2013, Noranda maintains that it yet again informed USW that "any dispute concerning Plan benefits must be brought pursuant to Plan procedures."[16]

Rather that going through what Noranda claims is "the mandatory review procedure under the Plan,"[17] USW filed suit in this matter on July 12, 2013, invoking this Court's federal question jurisdiction because the controversy centered on LMRA Section 301.[18] In its complaint, USW alleges that "Noranda has refused without justification to arbitrate the grievance"[19] and seeks an order to compel arbitration regarding Haydel's pension claims.[20]

In response, Noranda filed the pending motion to dismiss with a memorandum in support of its motion on August 12, 2013.[21] USW filed a response in opposition to Noranda's motion to dismiss on September 3, 2013.[22] With leave of Court, Noranda filed a reply in support of its motion on September 13, 2013.[23]

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] Rec. Doc. 1 at 1.

[19] *Id.* at 3.

[20] *Id.*

[21] Rec. Doc. 6.

[22] Rec. Doc. 15.

[23] Rec. Doc. 18.

## II. Parties' Arguments

### A. Noranda's Arguments in Support of Motion to Dismiss

Noranda raises two arguments in support of its motion to dismiss. First, Noranda contends that there is no right to arbitration for the grievance because grievances about pensions are controlled by the Pension Plan, which vests final and exclusive authority for decisions regarding pension benefits in the hands of Plan fiduciaries.[24] If dissatisfied with the Plan fiduciaries' decision, the Plan provides for internal review of the Plan fiduciaries' decision.[25] Finally, if employees are unsatisfied with the outcome of the internal review, the Plan allows employees to seek further review by filing a complaint in federal or state court pursuant to the Employee Retirement Income Security Act (ERISA) Section 502(a).[26] Noranda maintains that "it is undisputed that Plaintiff did not follow the Plan's procedure."[27] In other words, USW did not first seek internal review of the Plan fiducaries' decision and did not file a lawsuit under ERISA Section 502.  "As a result," Noranda argues, "binding precedent in this Circuit mandates the dismissal of Plaintiff's claim."[28]

Elaborating on its argument, Noranda cites *Local Union No. 4-449, Oil, Chem. & Atomic Workers Union, AFL-CIO v. Amoco Chem. Corp.*[29] Noranda argues, based on this case, that "[b]y adopting the claims review procedure within the Plan and by making the Plan Administrator's

---

[24]  Rec. Doc. 6-2 at 1.

[25]  *Id.*

[26]  *Id.*

[27]  *Id.*

[28]  *Id.*

[29]  589 F.2d 162 (5th Cir. 1979).

determination final and binding, the determinations of the Plan Administrator are non-artibable."[30]

Noranda maintains that the above case, *Amoco*, is "directly on point and controls the outcome of this case."[31] As Noranda explains:

> Not unlike the Labor Agreement applicable here, the collective bargaining agreement in *Amoco* . . . provided that sickness and disability benefits would be payable in accordance with the company's Sickness and Disability Benefits Plan. Just as the benefit determinations made by Noranda's Plan Administrator are final, so too were the benefit determinations made by the Board of Directors under the Sickness and Disability Benefits Plan in *Amoco* . . . . When the Board of Directors denied sick pay benefits for certain work absences, the union sought to have the matter resolved through the grievance and arbitration procedure of the collective bargaining agreement.[32]

According to Noranda, in *Amoco*, the Fifth Circuit concluded that it could not compel the company to arbitrate the dispute.[33] The Fifth Circuit held that, even though "arbitration must be given the benefit of the doubt," there was "no ambiguity as to the intent of the [Sickness and Disability Benefits] Agreement to exclude grievances dealing with sickness and disability benefits from arbitration."[34] Noranda cites to the *Amoco* Court's reasoning:

> Section IX of the [Sickness and Disability Benefits] Plan which is incorporated into the Agreement by Article VIII directly states that the Board reserves the right to interpret and apply the Plan, and that the decision of the Board [of Directors] will be final. It is clear that the plain and intended meaning of Article VIII of the Agreement and Section IX of the Plan is that questions concerning sickness and disability benefits should be presented to the Board, whose decision would be final. The language in Section IX of the Plan, which makes the Board's decision final in sickness and disability matters, obviously excludes arbitration for grievances

---

[30] Rec. Doc. 6-2 at 6.

[31] *Id*. at 7.

[32] *Id.* at 8.

[33] *Id.*

[34] 589 F.2d at 163.

6

concerning such subject matter. To hold otherwise would be to render Article VIII fo the Agreement and Section IX of the Plan totally meaningless.[35]

Noranda argues that "[t]here is no material difference between the terms of the labor agreement and the sickness and disability benefits plan at issue in *Amoco*, and the terms of the collective bargaining and pension benefits plan at issue here."[36] Significantly, both the labor agreement in *Amoco* and the labor agreement here incorporated by reference the terms of the benefit plans. And both of these benefits plans vest final decision-making authority in a specific person or institution, here the Plan fiduciaries (also called the Plan Administrator), in *Amoco* the Board of Directors.[37] Thus, following the Fifth Circuit's reasoning in *Amoco*, dismissal is appropriate here, according to Noranda, because the Plan necessarily expresses an intent to exclude arbitration by granting Plan fiduciaries "the ***sole discretion*** to make ***final*** benefit determinations."[38] Noranda argues that under *Amoco*, the granting of such a power "obviously excludes arbitration for grievances concerning such subject matter."[39]

Second, Noranda argues that Plaintiff's  complaint is time-barred because it was not filed within the requisite six months that Section 301 of the LMRA requires.[40] For this proposition, Noranda cites to *Aluminum, Brick & Glassworkers Int'l Union Local 674 v. A.P. Green Refractories,*

---

[35]  *Id.* at 164.

[36]  Rec. Doc. 6-2 at 8.

[37]  *Id.*

[38]  *Id.*

[39]  *Id.* (quoting 589 F.2d at 164).

[40]  *Id.* at 11.

*Inc.*,[41] in which the Fifth Circuit held that "an action to compel arbitration of a collective bargaining agreement under Section 301 of the Labor Management Relations Act is governed by the six-month limitation included in Section 10(b) of the National Labor Relations Act."[42] Here, Noranda claims that it made a clear refusal to arbitrate, thus triggering the six-month limitation period, on April 4, 2012, when Noranda responded to USW's grievance claim on behalf of Haydel by stating that the Labor Agreement did not control Haydel's benefit determination.[43] According to Noranda, this response to USW "necessarily meant that the determination was not controlled by the grievance procedure," and was tantamount to a refusal to arbitrate,[44] which, Noranda points out, "does not turn on whether the party resisting arbitration has filed a petition to stay arbitration or has uttered the magic words 'we refuse to arbitrate this dispute.'"[45] Thus, Noranda concludes that USW only had until October 4, 2012 to file suit under LMRA Section 301.[46]  As USW did not file suit until July 12, 2013, its claim is time-barred.[47]

**B. USW's Arguments in Opposition**

----

[41]  895 F.2d 1053 (5th Cir. 1990).

[42]  *Id.* at 1055.

[43]  Rec. Doc. 6-2 at 12.

[44]  *Id.*

[45]  *Id.* at 11 (quoting *Indep. Coca-Cola Employees' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc.*, 114 F. App'x 137, 140 n.11 (5th Cir 2004)).

[46]  *Id.* at 12.

[47]  *Id.*

USW argues in response that USW is entitled to "the presumption of arbitrability"  because the parties provided in the collective bargaining agreement[48] that:

> Should any differences arise between [Noranda] and [USW] as to the meaning or application of the provisions of this Agreement, or as to any question relating to the wages, hours or work, or other conditions of employment of any employee, the same shall be disposed of in accordance with the provisions of this Article.[49]

USW asserts that it "set forth the following factual basis in support of Haydel's Grievance and specifically alleged a violation of Article 9.D.1(c) of the [Labor Agreement],[50] which provides:

> Continuous service shall be calculated from date of first employment or reemployment following a break in continuous service in accordance with the following provisions of this Article; provided, however, that the effective date of employment prior to the date of this Agreement shall be the date of first employment or reemployment after any event which  constitutes a break in service under the practices in effect at the time the break occurred.[51]

Article 9.D.1(c) continues

> There shall be no deduction for any time lost which does not constitute a break in continuous service. Continuous service is broken by . . . . [a]bsence due either to layoff or to disability, or both, which continues for more than three (3) years; provided, however that employees injured while on duty for which Worker's Compensation is payable shall accumulate credit for Continuous service until the termination of the period for which their statutory compensation is payable. Notwithstanding the foregoing, employees shall accumulate continuous service up to five (5) years during an absence due either to layoff or to disability, or both, for the purpose of recall rights, only, under this Article 9.[52]

---

[48]  What Noranda refers to as the "Labor Agreement," USW calls the collective bargaining agreement. For consistency's sake, this Order will adopt the term "Labor Agreement" throughout.

[49]  Rec. Doc. 15 at 4.

[50]  *Id.*

[51]  *Id.* at 4–5.

[52]  *Id.* at 5.

Based on these provisions in the Labor Agreement, USW argues that Haydel's grievance set forth a dispute over "the proper application of the [Labor Agreement] seniority provisions . . . and raised questions concerning conditions of employment (seniority; continuous service; and pension service credit) . . . ."[53] Thus, the dispute over Haydel's pension, according USW, is subject to arbitration because "[t]he parties granted the impartial arbitrator's [sic] broad authority to consider matters other than the [Labor Agreement] when necessary in the determination of the submitted grievance."[54] From this, USW concludes that its "requested order to arbitrate should not be denied" because "Noranda does not point to any express provision in the [Labor Agreement] excluding seniority grievances from arbitration," as it is required to, according to USW, under Supreme Court precedent.[55]

USW argues that Noranda is wrong that "the only review procedure available to Haydel and the Union to address the dispute over Haydel's seniority rights and the determination of Haydel's pension service credit is through the 'claims procedure' established by Noranda's 'Retirement Committee' pursuant to Articles 11.07 and 11.08 the Plan."[56] "In advancing this argument," according to USW, "Noranda fails to acknowledge that application of Articles 11.07 and 11.08 is expressly limited by Article 11.17 of the Plan." According to USW, Article 11.17 "protects Haydel's and [USW's] existing [Labor Agreement] rights to pursue the present dispute through . . . arbitration . . . ." In support, USW quotes Article 11.17, which reads: "The provisions of this

---

[53] *Id.*

[54] *Id.*

[55] *Id.* at 6 (citing *AT&T Techs., Inc*, 475 U.S. 643, 648–51 (1986)).

[56] *Id.*

10

Article 11 shall not apply to the extent any such provision conflicts with an agreement with a collective bargaining unit." According to USW, "[t]he plain and intended meaning of Article 11.17 of the Plan is to protect rights established under the [Labor Agreement] from conflicting provisions set forth in Article 11 of the Plan."  USW argues that

> To the extent Noranda requires Haydel and [USW] to submit the Haydel Grievance to the Plan's Review Committee pursuant to Article 11.07 of the Plan, such action 'conflicts with' the parties' agreement in Article 10(A) of the [Labor Agreement] to address disputes 'as to the meaning or application of the provisions' of the [Labor Agreement] or 'as to any question relating to . . . other conditions of employment . . . '[57]

According to USW, "[s]uch a requirement is contrary to the express provisions of Article 11.7 of the Plan."[58]

> Further, USW argues that

> To the extent Noranda asserts that only the Retirement Committee, pursuant to authority granted under Article 11.08 of the Plan, can decide the issues raised in the Haydel Grievance, such action 'conflicts with' the parties' agreement in Article 10(C) of the [Labor Agreement] that the impartial arbitrator has authority to address grievances . . . .[59]

Such an assertion," USW concludes, "is contrary to the express provisions of Article 11.17 of the Plan."[60]

USW also takes issue with Noranda's characterization of *Amoco* as directly on point. USW believes there are important differences between *Amoco* and the present case, most notably that "[n]either the [Labor Agreement] nor benefits plans in Amoco [sic] contained language similar to

---

[57] *Id.* at 7.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 8.

Article 11.17 of the Plan."[61] As a result, USW concludes that "Noranda has failed to establish its burden, presentation of the 'most forceful evidence' of the parties' intention to exclude a seniority grievance . . . from . . . arbitration . . . ."[62]

Regarding Noranda's argument that USW's lawsuit is time-barred, USW asserts that Noranda's April 2012 letter did not trigger the limitations period because it did not "clearly or unequivocally" express a refusal to arbitrate, as is required.[63] According to USW, "[t]he April 2012 letter never mentioned how Haydel or the Union was to address disputes over Haydel's pension service credit, never stated such a dispute was not subject to . . . arbitration . . ., and did not express Noranda's unwillingness" to arbitrate.[64]

Moreover, Noranda argues that Noranda's argument is "contradicted by Noranda's counsel's February 1, 2013 letter . . . and Noranda's April 5, 2013 letter . . . ."[65] According to USW, "[t]he February 2013 letter claimed its 'non-arbitrability' position was presented to [USW] during the parties' January 16, 2013 meeting."[66] Also according to USW, "Noranda's April 2013 letter to [USW] . . . referenced the February 2013 letter and unidentified meetings, but made no claim that Noranda's 'non-arbitrability' position was asserted in the April 2012 letter."[67] Therefore, USW concludes that "[t]he April 2012 letter falls short of the requisite 'unequivocal' notice of a refusal

---

[61] *Id.*

[62] *Id.*

[63] *Id.* at 9.

[64] *Id.* at 9–10.

[65] *Id.* at 10.

[66] *Id.*

[67] *Id.* at 10.

to arbitrate that is necessary to trigger the six months limitations period for [USW]'s suit to compel arbitration."[68] USW notes that its "suit was filed within six months of the January 16, 2013 meeting cited in the February 2013 letter."[69] Thus, USW filed suit timely and Noranda's argument to the contrary "is without merit."[70]

### C. Noranda's Reply in Support of Motion to Dismiss

In reply, Noranda argues that *Amoco* is "[a] straightforward application of binding Fifth Circuit precedent" that "mandates dismissal of Plaintiff's Complaint."[71] According to Noranda, *Amoco* "makes clear that the language utilized by the parties in the Plan—granting each Plan fiduciary 'absolute discretionary authority' which is 'final, conclusive and binding'—renders Plaintiff's dispute involving pension benefits under the Plan non-arbitrable."[72]

Noranda reiterates that the subject of the grievance at issue is "the proper calculation of Kent Haydel's pension, which is a benefit established under and governed by the Plan, ***not the Labor Agreement***."[73] As Noranda sees it, "[B]ecause the Labor Agreement in no way addresses or implicates an employee's pension benefit, there is not, nor could there be, any conflict between the [Labor Agreement and Plan]."[74]

Breaking down its argument, Noranda begins by noting that Haydel's grievance is controlled

---

[68] *Id.* at 11.

[69] *Id.*

[70] *Id.*

[71] Rec. Doc. 18 at 1.

[72] *Id.*

[73] *Id.* at 2.

[74] *Id.*

by the Plan not the Labor Agreement.[75] Noranda argues that Article 9 of the Labor Agreement, cited

by USW, "has ***nothing*** to do with an employee's 'benefit service' under the Plan."[76] As Noranda

explains, "[T]he definition of 'continuous service' found in Article 9 of the Labor Agreement is only

used to determine how ***seniority*** is calculated." Noranda continues that "Plaintiff points to absolutely

no language that even remotely suggests that the definition of 'continuous service' in Article 9

should be used to determine how an employee's pension is calculated under the Plan."[77] For

Noranda, this distinction is key because USW is not challenging Haydel's seniority, which would

be subject to Article 9's definition of "continuous service."[78] Rather, "Plaintiff is challenging the

calculation of Haydel's benefit service under the Plan."[79] According to Noranda, "For that purpose,

Section 2.01 of the Plan provides its own separate and distinct definition of the term 'continuous

service.'"[80] Noranda also points out that, "Section 2.01 clearly states that the definition of

'continuous service' set forth in that Section shall be used 'for the purpose of determining [an

employee's] Vesting Service and Benefit Service ***under the Plan*** . . . .'"[81]

     Noranda further argues that USW's assertion that Section 11.08 of the Plan does not

expressly exclude arbitration is misguided under *Amoco*.[82] Quoting Section 11.08, Noranda notes

---

[75] *Id.* at 2.

[76] *Id.* at 3.

[77] *Id.*

[78] *Id.* at 3.

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.* at 4.

that the Section vests "absolute discretionary authority" in Plan fiduciaries to make "[r]espective decisions, determinations, interpretations, and constructions . . . in [their] sole discretion" with respect to Plan administration, supervision and management," and that such actions "shall be final, conclusive and binding on all parties."[83] Section 11.08 goes on to read that such acts by Plan fiduciaries "shall be given the maximum possible deference allowed by law."[84] This language, Noranda argues, tracks the language addressed by the Fifth Circuit in *Amoco*.[85] According to Noranda, the Fifth Circuit in *Amoco* rejected the very argument USW raises here: that because the operative article does not reference the labor agreement, the provision does not exclude a particular grievance from arbitration. Noranda argues that to the contrary, under *Amoco*, Section 11.08 clearly excludes arbitration of Plan grievances because of the language used in that Section.[86]

Finally, Noranda contends that there is no conflict between the Labor Agreement and Article 11 of the Plan.[87] First, Noranda believes that USW's argument in this regard is flawed because it "ignores the holding of the Supreme Court which states that 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"[88] Because the Fifth Circuit in *Amoco* held that language granting discretionary authority to plan administrators is sufficient to exclude certain issues from arbitration, Noranda argues that there has been no willingness on its part

---

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] *Id.* at 6.

[88] *Id.* (quoting *AT&T Techs., Inc.*, 475 U.S. at 648).

to agree to submit pension grievances to arbitration.[89] Second, Noranda points out that nothing in the Labor Agreement prevents a Plan fiduciary from rendering final and binding determinations on all parties.[90] The one provision cited by USW, Article 9 of the Labor Agreement, "does not reference or in any way implicate the Plan," according to Noranda.[91] Thus, "[t]here is simply no conflict between the Labor Agreement and Article 11 of the Plan."[92]

As for the issue of untimeliness, Noranda argues that it is sufficient that a party simply "take the unequivocal position that it will not arbitrate."[93] According to Noranda, its letter to USW on April 2, 2012 was sufficient to communicate that it would not arbitrate because it informed USW that the grievance arose under the Plan, which does not provide for arbitration, and not under the Labor Agreement, which provides for arbitration.[94] As Noranda puts it, "it is hard to imagine any words or conduct that could more clearly express an intent not to arbitrate than to say that a particular dispute is not governed by the terms of the agreement containing the arbitration provision."[95] Thus, Noranda concludes that "[b]ecause the April 4, 2012 letter constitutes an unequivocal refusal to arbitrate, Plaintiff was required to have filed its Complaint by no later than

---

[89] *Id.*

[90] *Id.* at 7.

[91] *Id.*

[92] *Id.*

[93] *Id.* (quoting *Indep. Coca-Cola Employees' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc.*, 114 F. App'x 137, 140 n.11 (5th Cir. 2004)).

[94] *Id.*

[95] *Id.* at 7–8.

16

October 4, 2012."[96] Since USW's complaint was not filed until July 12, 2013, Noranda argues that the claim is accordingly untimely.[97]

### III. Standard on a Motion to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[98] "A motion to dismiss on the basis of the pleadings alone should rarely be granted."[99] Although a court must accept the factual allegations in the pleadings as true, the plaintiff must plead enough facts to state a claim for relief that is plausible on its face.[100] "Determining whether a complaint states a plausible claim for relief will [] be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[101] "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[102] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the

---

[96] *Id.* at 8.

[97] *Id.*

[98] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

[99] *Madison* v. *Purdy*, 410 F.2d 99, 100 (5th Cir. 1969).

[100] *Doe*, 528 F.3d at 418 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[101] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[102] *Drs. Bethea, Moustoukas & Weaver, LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 n. 7 (5th Cir. 2004).

pleader is entitled to relief."[103] Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.[104]

Thus, "[w]hen considering a motion to dismiss, the district court must take the facts as alleged in the complaint as true, and may not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[105] In evaluating the plausibility of the claim, the district court should confine itself to the pleadings.[106] "If the district court considers information outside of the pleadings, the court must treat the motion [to dismiss] as a motion for summary judgment. Although the court may not go outside the complaint, the court may consider documents attached to the complaint."[107]

While in considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings and documents attached to the complaint, the Fifth Circuit has instructed that consideration of documents attached to the motion to dismiss may also be considered when they are referred to in the complaint and are central to the plaintiff's claim.[108]

## IV. Law and Analysis

### A. Consideration of Documents Outside the Pleadings in a Motion to Dismiss

As an initial matter, the Court notes that Noranda's motion to dismiss depends in large part on provisions in the Pension Plan that are not specifically alleged in USW's complaint. Noranda's

---

[103] *Ashcroft*, 556 U.S. at 678–79 (internal quotation marks omitted).

[104] *Twombly*, 550 U.S. at 555–56.

[105] *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004).

[106] *Id.*

[107] *Id.*

[108] *See Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012).

motion to dismiss also relies on a letter it sent to USW on April 4, 2012. Neither of these documents was attached by USW to its complaint nor referenced by it in the complaint. It is well-established that, in deciding whether to grant a motion to dismiss, a district court may not "go outside the complaint."[109] To take notice of documents outside of the complaint that are not otherwise judicially noticeable is for the district court to commit reversible error.[110] The Fifth Circuit has recognized one limited exception to this rule.[111] "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim."[112]

Noranda has attached the Pension Plan[113] and April 4, 2012 letter[114] to its motion. The complaint, however, only refers to the Labor Agreement (attached as Exhibit "A")[115] and not the Plan or letter.[116] While it is true that Article 19 of the Labor Agreement incorporates by reference the terms of the Plan,[117] this Court is reluctant to consider on a motion to dismiss a document that

---

[109] *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

[110] *See, e.g.*, *Rodriguez v. Rutter*, 310 F. App'x 623 (5th Cir. 2009) (reversing district court's granting of motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) because district court improperly considered evidence outside the complaint and, thus, dismissal was not warranted); *see also Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007)) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

[111] *Scanlan*, 343 F.3d at 536.

[112] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted).

[113] Rec. Doc. 6-4.

[114] Rec. Doc. 6-5.

[115] Rec. Doc. 1-3.

[116] Rec. Doc. 1 at ¶¶ 5–6, 9–10.

[117] *See* Rec. Doc. 6-2 (quoting Article 19 as, "The Defined Benefit Pension, Defined Contribution, 401(k) Retirement Savings Plan, VEBA and Supplemental Unemployment Benefits Programs shall be set forth in a booklet . . . and such booklet is incorporated herein and made a part of this 2005 Labor Agreement by such reference.").

is only mentioned in the plaintiff's complaint by way of an attached document that references it. Even though the Labor Agreement incorporates the Plan by reference, the relationship between the Plan and the complaint is too attenuated to warrant consideration of the Plan on a motion to dismiss. The fact of the matter is that USW's complaint never mentions the Plan at all. At the very least, then, it is fair to conclude that at this stage in the proceedings, the Plan is not "central to [plaintiff's] claim," which is what this Circuit requires for judicial noticing of documents offered by a defendant on a motion to dismiss. Accordingly, the Court may not rely upon the Pension Plan and its provisions in deciding Defendant's pending motion to dismiss. For the same reason, the Court may not consider Noranda's April 4, 2012 letter to USW. It, too, is neither mentioned in nor attached to the complaint. Since the Plan and the letter are not specifically cited or relied upon by USW in its complaint, it would be error to consider either in a motion to dismiss.[118]

## V. CONCLUSION

For the foregoing reasons, the Court finds that when reference is made only to the pleadings, as must be done in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), USW has sufficiently alleged a cause of action. Accordingly,

---

[118] If the parties stipulate to the language of both the Labor Agreement and the Plan and further stipulate that there is no material fact genuinely in dispute, the Court would reconsider the filing of the motion as a converted motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

**IT IS HEREBY ORDERED** that Noranda's motion to dismiss[119] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this <u>18th</u> day of March, 2014.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[119] Rec. Doc. 6.