# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5059** |
| **NORANDA ALUMINA, LLC** | **SECTION: "G"(3)** |

## ORDER AND REASONS

In this litigation, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied

Industrial and Service Workers International Union, AFL-CIO ("USW") has brought suit to seek

an order to compel arbitration against Defendant Noranda Alumina, LLC ("Noranda"), pursuant to

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Presently

pending before the Court are USW's "Motion for Summary Judgment"[1] and Noranda's "Motion for

Summary Judgment and Motion for Fees."[2] Having considered the complaint, the parties' briefs, the

record, and the applicable law, the Court will deny USW's motion, grant-in-part Noranda's motion,

and deny-in-part Noranda's motion.

## I. Background

### A. Factual Background

In its complaint, Plaintiff USW contends that it is a "part[y] to a collective bargaining

agreement" ("CBA") with Noranda that was effective from October 1, 2005 to September 30, 2010.[3]

According to USW, Kent Haydel, a "member of the bargaining unit represented by USW," worked

---

[1] Rec. Doc. 31.

[2] Rec. Doc. 32.

[3] Rec. Doc. 1 at p. 2.

for Noranda until May 1, 2006, "at which time he suffered a work-place injury and went out on Workers' Compensation," which he received until May 4, 2010.[4] USW contends that Haydel subsequently "filed for and received a disability retirement pension from Noranda," but was only credited with "one year of pension service credit" during the time in which he was off work and on Worker's Compensation.[5] USW maintains that Haydel should receive credit for all four years he was "out on Worker's Compensation," pursuant to Section 9(d)(1)(c) of the CBA.

USW claims that it filed a grievance on Haydel's behalf challenging "Noranda's failure to grant him pension credit for three of the four years he was out on Worker's Compensation," whereupon the parties were unable to resolve the dispute and USW "appealed the matter to arbitration."[6]

### B. Procedural Background

USW filed a complaint in this matter on July 12, 2013, seeking "judgment requiring Noranda to arbitrate" its grievance, as well as costs and attorney's fees.[7] On August 12, 2013, Noranda filed a "Motion to Dismiss."[8] This Court denied the motion on March 18, 2014, concluding that Noranda relied in its motion upon documents "not specifically cited or relied upon" by USW in its complaint, or bearing an excessively "attenuated" relationship with the complaint.[9] Referring only to the

---

[4] *Id.*

[5] *Id.* at pp. 2–3.

[6] *Id.* at p. 3.

[7] Rec. Doc. 1.

[8] Rec. Doc. 6.

[9] Rec. Doc. 26 at pp. 18–20.

pleadings, "as must be done in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)," the Court held that "USW has sufficiently alleged a cause of action."[10]

Noranda filed an answer on April 22, 2014,[11] contending that although Article 10 of the CBA "sets forth a procedure for the adjustment of grievances," which "allows either party to appeal a grievance . . . if the grievance is covered by Article 10," the present dispute is not governed by Article 10 of the CBA.[12] Noranda further asserts that Article 9 of the CBA has no "impact . . . on the calculation of an employee's 'Benefit Service' under the Pension Plan" ("Plan"), and denies that it "improperly calculated [Haydel's] 'Benefit Service.'"[13] Finally, Noranda asserts several affirmative defenses.[14]

Specifically, Noranda contends that: (1) USW's complaint "fails to state a claim or cause of action upon which relief may be granted;" (2) USW's "claim is barred by the applicable statute of limitations;" (3) USW's "claim is barred to the extent Plaintiff and/or [Haydel] failed to exhaust his administrative remedies under the Pension Plan;" (4) USW's "claims are barred by the doctrine of waiver, estoppel, laches, and/or election of remedies;" (5) "the terms of the Pension Plan granting each Plan fiduciary 'absolute discretionary authority' which is 'final, conclusive and binding' renders Plaintiff's dispute involving pension benefits of the Pension Plan non-arbitrable.[15]

---

[10] *Id.* at p. 20.

[11] Rec. Doc. 30 at p. 2.

[12] *Id.* at p. 2.  Noranda maintains that USW "is not entitled to bring a grievance under Article 10 for complaints or disputes involving the pension plan." *Id.* at p. 3.

[13] *Id.* at p. 3.

[14] *Id.* at pp. 4–6.

[15] *Id.*

3

USW filed the instant "Motion for Summary Judgment" on May 7, 2014.[16] On May 19, 2014, Noranda filed a "Motion for Summary Judgment and Motion for Fees."[17] Both motions were set for submission on June 11, 2014.[18] Noranda filed a response to USW's motion on June 3, 2014.[19] That response was marked deficient for failure to comply with Local Rule 56.2.[20] USW filed a response to Noranda's motion on June 5, 2014.[21] On June 6, 2014, with leave of Court, USW filed a reply to Noranda's deficient June 3, 2014 opposition.[22] On June 9, 2014, Noranda filed an opposition to USW's motion that complies with Local Rule 56.2, thereby timely curing the deficiency identified by the Clerk of Court. Finally, on June 12, 2014, with leave of Court, Noranda filed a response to USW's opposition to its motion for summary judgment.[23]

On August 28, 2014, USW and Noranda filed a Proposed Pre-Trial order in which they represented that "there are no material facts . . . genuinely in dispute," meaning that this case

---

[16] Rec. Doc. 31.

[17] Rec. Doc. 32.

[18] Rec. Doc. 31; Rec. Doc. 32.

[19] Rec. Doc. 33.

[20] Local Rule 56.2 provides that "any opposition to a motion for summary judgment must include a separate and concise statement of the material facts which the opponent contends present a genuine issue. All material facts in the moving party's statement will be deemed admitted, for purposes of the motion unless controverted in the opponent's statement."

[21] Rec. Doc. 37.

[22] Rec. Doc. 40.

[23] Rec. Doc. 44.

"presents a pure question of law."[24] The Court, in turn, canceled the Pre-Trial Conference and trial date in this matter.[25]

## II. Parties' Arguments

### A.   USW's "Motion for Summary Judgment"[26]

#### 1.   Presumption of Arbitrability

In support of its "Motion for Summary Judgment," USW first asserts that "the grievance is substantively arbitrable because there is no 'most forceful' evidence showing [that] the arbitration provision does not apply."[27] On this point, USW contends that "it is well-settled that arbitration is the 'preferred method of resolving disputes arising during the term of a [CBA]," as evidenced by several United States Supreme Court cases affirming a "clear statutory preference favoring the arbitration of labor disputes."[28] According to USW, "[i]t is the Court's role to decide the threshold issue of whether the parties have agreed to submit a particular dispute to arbitration," not to decide "the potential merits of the underlying claims."[29] Moreover, USW argues, the existence of a contract with an arbitration clause creates a "presumption of arbitrability," such that arbitration should not be denied unless "it may be said with positive assurance" that the arbitration clause does not cover the  dispute.[30] In other words, USW argues, the presumption in favor of arbitrability may only be

---

[24] Rec. Doc. 50 at p. 12.

[25] Rec. Doc. 51.

[26] Rec. Doc. 31.

[27] Rec. Doc. 31–1 at p. 5.

[28] *Id.* at p. 6.

[29] *Id.* at p. 7.

[30] *Id.* at pp. 7–8.

rebutted by a showing of (1) "the existence of an express provision excluding the grievance from arbitration," or (2) "the 'most forceful evidence' of a purpose to exclude the claim from arbitration."[31]

### a.   Applicability of Presumption

USW asserts that "the presumption of arbitrability applies here because the CBA contains a broad arbitration provision" in Article 10(A), which defines "arbitrable grievances" as those "aris[ing] between the Company and the Union as to the meaning or application of the provisions of this Agreement, or as to any question relating to the wages, hours of work, or other conditions of employment of any employee."[32] Moreover, USW contends, the parties "expressly agreed that the role of the arbitrator would be to 'interpret, apply, or determine compliance with the provisions of the Agreement, Memoranda, Supplements, etc., insofar as shall be necessary to the determination of grievances appealed to the arbitrator,' [and that] [t]he arbitrator's decision 'shall be final and binding on the parties.'"[33]

In this case, USW contends, "the grievance at issue alleges [that] the Company violated Article 9(D)(1)(c) of the CBA by ignoring a portion of the time Haydel was absent from work while receiving Workers' Compensation when calculating his pension benefits," a dispute that "plainly concerns 'the meaning or application of the Agreement,'" and therefore falls within the scope of Article 10(A) of the CBA.[34] Further, USW asserts, "it is well-established that pension benefits, as

---

[31] *Id.* at p. 8.

[32] *Id.*

[33] *Id.* at pp. 8–9.

[34] *Id.* at p. 9.

a form of deferred compensation, are both 'wages' and 'conditions of employment,'" making the instant issue about pension benefits a question "relating to the wages, hours of work, or other conditions of employment" within the meaning of the CBA's arbitration provision.[35]

### b.   Exclusion from Arbitration

USW asserts that "no express provision excludes [this grievance] from arbitration," such as would be required to "prevent this grievance from being arbitrable."[36] Additionally, USW argues, since no express language exempts the present dispute from the CBA's arbitration clause, Noranda must—but cannot—"bring forth 'most forceful' evidence that the parties intended [that] this dispute would not be subject to arbitration."[37]

Specifically, USW argues that Noranda "cannot rely on anything in Article 11 of the Plan to show that the Union and the Company did not intend for [this dispute] to be resolved by arbitration under the Plan," since "Section 11.17 of the Plan plainly states that [t]he provisions of Article 11 shall not apply to the extent any such provision conflicts with an agreement with a collective bargaining unit," meaning that any provisions of the Plan that conflict with the CBA must yield to the provisions of the CBA, including the arbitration provision in Article 10(A).[38] Therefore, USW asserts, "the portions of Article 11 of the Plan purportedly giving Plan fiduciaries absolute authority to interpret Plan provisions" must give way to the CBA's arbitration procedure.[39]

---

[35] *Id.*

[36] *Id.*

[37] *Id.* at p. 10.

[38] *Id.* at pp. 10–11.

[39] *Id.* at p. 11.

USW further argues that the present case is distinguishable from cases where "benefit plan provisions vesting discretion in plan administrators" were held to indicate "an agreement to exclude those plan provisions from contractual grievance and arbitration provisions," because the language in Section 11.17 "explicitly trumps the Plan provisions on which the Company relies," preventing Noranda from presenting "the most forceful evidence" that the parties intended to exclude the present grievance from the arbitration provisions.[40]

### 2.    Timeliness

USW next asserts that "this action is timely because Noranda first unequivocally refused to arbitrate on January 16, 2013."[41] USW argues that "[a] cause of action to compel arbitration accrues when one party clearly refuses to arbitrate the dispute," and that, once accrued, must be sued upon within six months.[42] According to USW, refusal "must be unequivocal, whether by words used or by unambiguous conduct."[43] In this case, USW argues, Noranda "first indicated . . . that it would not arbitrate the dispute in a meeting between [USW] and [Noranda] on January 16, 2013," at which Noranda "expressed its position that issues concerning an employee's pension benefit service credit are not subject to the grievance-arbitration process established by the CBA."[44] Therefore, USW argues, its cause of action accrued on January 16, 2013, making the filing of the instant lawsuit on July 12, 2013 timely.[45]

---

[40] *Id.*

[41] *Id.* at p. 12.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

USW maintains that Noranda's "April 12, 2012 letter to Local Union President Delaneuville" did not amount to an "unequivocal refusal to arbitrate," because that letter only stated that Haydel's "pension benefit service was calculated as provided by Article 2 of the Plan," and cited "Labor Agreement Article 19," an article that purportedly "refers to Defined Benefit pension, Defined Contribution, 401(k) retirement savings plan, VEBA and Supplement Unemployment benefits," wherein Deleneuville "will find the reference to the Plan documents."[46] According to USW, the letter "nowhere mentioned how Haydel or the Union were to address disputes over Haydel's pension service credit, never stated that disputes relating to pension service credit were not subject to the CBA's grievance and arbitration procedures," and finally "did not express Noranda's unwillingness to address such a grievance under the CBA's arbitration procedures."[47] Therefore, USW contends, the April 12, 2012 letter does not "even imply that [Noranda] would refuse to arbitrate the dispute."[48]

Indeed, USW argues, Noranda's "position," as stated in the letter, "was entirely consistent with a position that the CBA's grievance-arbitration provisions would govern the resolution of the dispute over Haydel's pension service credit," and "would be quite reasonable, since Section 11.17 of the Plan states that the CBA provisions prevail over inconsistent provisions in Article 11.[49] Moreover, USW contends, the letter's "reference to Article 19, the provision incorporating the Plan

---

[46] *Id.* at p. 13.

[47] *Id.*

[48] *Id.*

[49] *Id.*

9

into the CBA, also suggests that the Company viewed the dispute as one governed by the CBA and its grievance and arbitration procedures."[50]

Finally, USW asserts that Noranda's "other correspondence" with it "also undermines its current position that it unequivocally refused to arbitrate on April 4, 2012."[51] According to USW, Noranda's counsel sent a letter on February 1, 2013 in which it "twice identified the January 16, 2013 meeting as when [Noranda] had stated its position that disputes under the Plan are not substantively arbitrable."[52] Indeed, USW maintains, Noranda's counsel mentioned the April 12, 2012 letter but "never claimed that" the author of that letter "had notified [USW] that Noranda would not arbitrate the dispute."[53] Further, USW argues, a letter subsequently sent by a Noranda employee referenced "meetings" and the February 1, 2013 letter, but omitted any mention of the April 4, 2012 letter, thereby "implictly admit[ting]" that the April 4, 2012 letter was "not a refusal to arbitrate."[54]

### 3.    Attorney's Fees

USW asserts that it is entitled to attorney's fees, because courts may award attorney's fees where "the Company acted frivolously or in bad faith,"  in cases arising under 29 U.S.C. § 185.[55] USW contends that it is entitled to attorney's fees here because "on the face of Article 10 of the CBA, questions relating to the meaning or application of the CBA or to wages and conditions of

---

[50] *Id.*

[51] *Id.*

[52] *Id.* at pp. 13–14.

[53] *Id.* at p. 14.

[54] *Id.*

[55] *Id.*

employment," including pension benefits, which are "clearly included," are expressly subject to arbitration.[56]  Noranda's "position that Article 11 of the Plan removes disputes involving the Plan from the [CBA's] dispute resolution procedure" is frivolous, USW argues, "because Section 11.17 of the Plan clearly contradicts" it.[57]  USW argues that Noranda's timeliness argument is also frivolous, because the April 4, 2012 letter "plainly" did not inform USW of Noranda's refusal to arbitrate, a conclusion supported by "Noranda's decisions not to mention" the letter "when listing the times Noranda had told the [USW] it would not arbitrate this dispute."[58]

**B.     *Noranda's Opposition*[59]**

### 1.     Exclusion from Arbitration

In opposition to USW's motion, Noranda asserts that the "presumption of arbitrability gives way to an express provision excluding a dispute from arbitration," including where, as here, "[1] [the CBA] has a standard grievance and arbitration procedure . . . [2] [the CBA] incorporates by reference the terms of the benefits plan . . . [3] [the Plan] makes the benefit determinations of the Plan Administrator final . . .[and] [4] "the Plan Administrator has the sole discretion to determine all matters relating to eligibility, participation[,] as well as the operation of the plan, including all benefit eligibility and benefit amount determinations."[60]  Noranda argues that "the facts supporting the non-arbitrability of the parties' pension dispute are more compelling here than they were" in the

---

[56]  *Id.* at pp. 14–15.

[57]  *Id.* at p. 15.

[58]  *Id.*

[59]  Rec. Doc. 41.

[60]  *Id.* at pp. 8–10 (citing *Local Union No. 4-449, Oil, Chemical, and Atomic Workers Union, AFL-CIO v. Amoco Chemical Corp.*, 589 F.2d 162 (5th Cir. 1979) (per curiam)).

Fifth Circuit's decision in *Local Union No. 4-449, Oil, Chemical, and Atomic Workers Union, AFL-CIO v. Amoco Chemical Corp.* ("*Amoco*"), cited by Noranda in support of the propositions just stated, because here, Noranda's Plan "explicitly allow[s] further review beyond the determinations made by the Plan Administrator."[61] Noranda contends that, in addition to the Fifth Circuit in *Amoco*, other circuits have held that "these types of review procedures expressly exclude from arbitration grievances challenging decisions made by a plan administrator."[62]

### a.    Conflict with the CBA

Noranda further argues that "no conflict exists between the Pension Plan and [the CBA]," contrary to USW's assertions on this point, because the arbitration provision present in Article 10 "only applies to those disputes that fall within the scope of Article 10 and are not otherwise exempted from Article 10."[63] According to Noranda, "the language contained in the Noranda SPD and Pension Plan clearly and unambiguously exempt [sic] pension disputes from application of Article 10 of the [CBA]," meaning that "there simply can be no conflict between Article 11 of the Pension Plan and Article 10 of the Labor Agreement."[64] Noranda asserts that any asserted conflict between Article 11 of the Pension Plan and the CBA's arbitration agreement "would have existed" in the contracts at issue in the Fifth Circuit's *Amoco* decision, but that the Fifth Circuit found no such conflict, but rather an "exemption from arbitration."[65]

Finally, Noranda asserts that USW "fails to recognize" that both the Pension Plan and the

---

[61]  *Id.* at p. 11.

[62]  *Id.* at pp. 11–13.

[63]  *Id.* at p. 17.

[64]  *Id.* at pp. 17–18.

[65]  *Id.* at p. 18.

Summary Plan Description ("SPD") have been incorporated by reference into the CBA.[66] Noranda argues that the SPD, like the Pension Plan, "contains broad language expressly exempting Pension Plan disputes from the arbitration agreement."[67] Noranda asserts that although "a provision of the Noranda SPD . . . states that if there is a conflict between the Pension Plan and the SPD[,] the terms of the Pension Plan control," USW "fails to cite any conflict between the Pension Plan and the SPD."[68] "Indeed," Noranda argues, "the Pension Plan is entirely consistent with the SPD and expressly excludes pension disputes from the arbitration provision of the [CBA]."[69]

### b.      Article 9 of the CBA

Noranda further asserts that USW "attempts to contort Haydel's pension dispute into one that is somehow impacted by the seniority provisions contained in Article 9 of the [CBA]," because that Article deals with "plant seniority," while "this case is undisputedly about a pension determination," a subject that has "nothing to do with an employee's 'benefit service' under the Pension Plan."[70] Noranda asserts that USW's citation to the definition of "continuous service" in Article 9 is inapposite, since that term is "synonymous with the term 'seniority,'" and USW "cites absolutely no language that even remotely suggests that the definition" of the term "should be used to

---

[66] *Id.* at p. 19.

[67] *Id.* Specifically Noranda asserts that the SPD "vests the Plan Administrator with 'sole discretion to determine all matters relating to eligibility, participation as well as operation of the plan, including all benefit eligibility and benefit amount determinations,"grants the Plan Administrator "exclusive discretion to make decisions, determinations, interpretations, and constructions with respect to the administration and operation of the plan," and provides that "all decisions of the Plan Administrator shall be final and binding on all parties." *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.* at pp. 13–14.

determine how an employee's pension is calculated under the Pension Plan."[71] Indeed, Noranda argues, "Section 2.01 of the Pension Plan provides its own separate and distinct definition of the term 'continuous service,'" and states that this definition "shall be used for the purpose of determining [an employee's] Vesting Service and Benefit Service under the plan."[72] Therefore, Noranda argues, USW's citation of Article 9 is a "bald attempt to bootstrap what is clearly a pension dispute into a dispute that is somehow impacted by the seniority provisions of the Labor Agreement."[73]

### c.   Pension Plan

Noranda asserts that "even if Article 9 is relevant to the calculation of a participant's pension, the language of the Noranda Pension Plan and SPD would nonetheless give the Plan Administrator sole discretion to make Article 9 seniority determinations in connection with a pension dispute," since the Noranda SPD and Pension Plan "vest with the Plan administrator the 'sole discretion to determine all matters relating to eligibility, participation, as well as the operation of the plan, including all benefit eligibility and benefit amount determinations.'"[74] According to Noranda, this grant of discretion "necessarily encompasses determinations regarding a participant's seniority, to the extent relevant to a participant's pension calculation."[75]

Noranda argues that the United States Court of Appeals for the Sixth Circuit's *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.* is "directly on point" with the present case, because

---

[71] *Id.* at p. 14.

[72] *Id.*

[73] *Id.*

[74] *Id.* at p. 15.

[75] *Id.*

in that case, the Sixth Circuit "rejected the union's argument that its grievance was subject to arbitration because it was related to the seniority provisions of the collective bargaining agreement rather than the terms of the pension plan," because the Pension Plan established "alternative dispute resolution provisions" establishing that "a grievance under . . . [the seniority provisions] of the CBA seeking a determination of rights under the Pension Plan would be expressly excluded from the arbitration clause."[76] Further, Noranda argues, the Sixth Circuit rejected the union's assertion "that the grievance arose solely under the seniority provisions of the collective bargaining agreement," because the union's own complaint asserted that "the underlying subject of the grievance was pension rights under the Pension Plan."[77] Noranda argues that here, as in *Anheuser Busch*, "the Noranda Pension Plan and SPD make absolutely clear that all . . . disputes related to the pension plan are excluded from arbitration."[78]

### d.    Past Practice

Noranda also asserts that "past practice confirms that the pension dispute is not arbitrable," because neither USW nor any of its members "ha[ve] ever grieved a pension benefit determination at any point from the time Noranda first obtained an ownership interest in the Gramercy refinery on October 1, 2004 until the present," even though more than 80 of those members applied for a pension benefit since January 1, 2005, and more than 50 members have commenced pension benefits in the past 3.5 years, all "in accordance with the procedures established in the Noranda SPD and

---

[76] *Id.* at pp. 15–16.

[77] *Id.* at pp. 16–17.

[78] *Id.* at p. 17.

Pension Plan."[79] Accordingly, Noranda asserts, "the position taken by Plaintiff in this case is entirely inconsistent with the position it and its members have taken for the past 9.5 years,"[80] demonstrating that USW's complaint, filed after Haydel "submitt[ed] an application to the Plan Administrator for a disability pension," is "nothing other than a bald attempt at forum shopping."[81]

### 2.       Timeliness

Noranda next argues that USW's claim is untimely, because USW "challenged Noranda's calculation of Haydel's benefit service on April 3, 2012," asserting "that the issue was governed by the terms of the [CBA] and, in particular, Article 9 of the [CBA]."[82] Noranda contends that in its April 4, 2012 response, it "pointed out that the calculation of [Haydel's] benefit service was governed by the terms of the Pension Plan," necessarily implying that "the determination was not controlled by the grievance procedure established in the Labor Agreement."[83] According to Noranda, "there is no other rational manner in which to interpret Noranda's April 4, 2012 letter," since "the specific language utilized in the Noranda SPD and Pension Plan 'clearly' and 'obviously excludes arbitration for grievances concerning such subject matter," just as did the pension plan at issue in *Amoco*.[84] Noranda further argues that its subsequent communication, discussed by USW in support of its motion, does not support its assertion that Noranda did not refuse to arbitrate until after April

---

[79]  *Id.* at p. 20.

[80]  *Id.*

[81]  *Id.*

[82]  *Id.* at pp. 21–22.

[83]  *Id.* at p. 22.

[84]  *Id.*

16

4, 2012, because the April 4, 2012 letter amounted to a refusal to arbitrate.[85] Therefore, Noranda asserts, USW's claim is untimely.[86]

### 3.  Fees

Finally, Noranda asserts that USW is "not entitled to an award of fees," because USW's "claims were brought in bad faith and are meritless," and because USW, "rather than Noranda, has pursued this litigation by using vexatious litigation practices."[87] Moreover, Noranda argues, "even assuming that USW's arguments have merit . . . the only evidence that [USW] cites in support of its request for fees is the fact that Noranda refused to arbitrate the grievance."[88] On this point, Noranda argues that its actions "were fully supported" by Fifth Circuit precedent, and, in any event, a refusal to arbitrate "cannot, as a matter of law, support a claim for fees."[89]

## C.  USW's Reply[90]

### 1.  *Amoco* Decision

In further support of its motion, USW contends that the Fifth Circuit's *Amoco* decision, cited by Noranda, "does not control" the present issue, because the Plan here "contains language, found nowhere in *Amoco*, indicating that the parties intended that grievances like [the present grievance]

---

[85] *Id.* at p. 23.

[86] *Id.*

[87] *Id.* at p. 24.

[88] *Id.*

[89] *Id.*

[90] Rec. Doc. 40. With leave of Court, USW filed its reply to Noranda's opposition before Noranda refiled its opposition along with the required Local Rule 56.2 statement, which the opposition lacked when originally filed. *See* Rec. Doc. 33.

be arbitrable."[91] USW asserts that although the Fifth Circuit found in *Amoco* that "there was no ambiguity as to the intent of the Agreement to exclude grievances dealing with sickness and disability benefits from arbitration," this Court "cannot draw such a conclusion because Section 11.17 of the Plan provides that the Plan language on which [Noranda] relies 'shall not apply to the extent any such provision conflicts with [the CBA].'"[92]

Here, USW asserts, "the conflict between the CBA and Section 11.08 of the Plan is obvious," since USW filed a grievance asserting a violation of Haydel's seniority rights under Article 9(d)(1)(c) of the CBA.[93] USW contends that although its grievance "indirectly challenges a benefit determination," it also implicates the CBA, such that it cannot be both resolved by arbitration (pursuant to the CBA) and "'conclusive[ly] decided by Plan administrators," as provided in Section 11.08 of the Plan.[94] In *Amoco*, USW argues, the Fifth Circuit "resolved a similar tension by inferring that the parties intended to remove benefit disputes from arbitration."[95] Here, by contrast, "no such inference is appropriate," since "the parties created an explicit rule for this situation in Section 11.17 of the Plan," whereas such language was absent in *Amoco*.[96] Likewise, USW argues, *Anheuser-Busch* lacked an "analogue to the unique language in Section 11.17," making the case distinguishable.[97]

---

[91] *Id.* at p. 2.

[92] *Id.* (citations and internal quotation marks omitted).

[93] *Id.*

[94] *Id.* at pp. 2–3.

[95] *Id.* at p. 3.

[96] *Id.*

[97] *Id.*

## 2.    SPD

USW next contends that "the [SPD] cannot override Section 11.17 of the Plan," since: (1) it is "an attempt to 'help explain the main provisions of the plan in simple and understandable language'" that "has no independent legal effect," and "is not to be considered a substitute for the plan document,"  and (2) states that "[i]f there is ever a conflict between this summary and the plan document or there is a need for legal interpretation of the plan, the official plan document governs."[98] Therefore, USW argues, "the SPD cannot nullify the effect of Section 11.17 of the Plan."[99]

## 3.    Arguments on the Merits

Finally, USW argues that "Noranda should save its arguments on the merits for the arbitrator," since "the question whether the parties' use of the term 'continuous service' in the CBA is as the company argues, entirely separate from their use 'continuous service' in the Plan is to be decided by an arbitrator."[100] According to USW, the parties "expressly agreed that the arbitrator could 'interpret, apply or determine compliance with the provisions of this Agreement, Memoranda, Supplements, etc., insofar as shall be necessary to the determination of grievances appealed to the arbitrator," allowing the arbitrator to "consider the plan and examine how its provisions interact with the language in Article 9(D)(1)(c) of the CBA."[101] USW asserts that "Noranda will have every opportunity to argue to the arbitrator that it did not violate Article 9(D)(1)(c)," while "[t]he only

---

[98] *Id.* at pp. 3–4.

[99] *Id.* at p. 4.

[100] *Id.*

[101] *Id.*

item for the Court's decision is whether any possible interpretation of the parties' agreements would allow [this dispute] to be submitted to arbitration." USW maintains that "Section 11.17 of the Plan shows that this was the parties' intent."[102]

### D.   Noranda's "Motion for Summary Judgment and Motion for Fees"[103]

#### 1.   Exclusion from Arbitration

In its "Motion for Summary Judgment and Motion for Fees," Noranda initially asserts that "[w]hether the grievance is arbitrable is a matter for judicial determination," and that "[e]ven in circumstances where there is a presumption of arbitrability, a matter is not arbitrable if 'the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,'" such as is the case where an express provision excludes a dispute from arbitration.[104]

As it did in opposition to USW's motion, Noranda asserts that the Fifth Circuit's *Amoco* decision controls the issue presently before the Court, since "[t]here is no material difference between the terms of the [CBA] and Pension Plan applicable here . . . [and] the [CBA] and benefits plan that were applicable in *Amoco*."[105] Noranda contends that its Plan "goes even further" than the plan at issue in *Amoco*, in that it allows for further review "beyond the determination made by the Plan Administrator," making the facts at issue here "more compelling" than in *Amoco*.[106] Noranda also asserts that several United States Courts of Appeals have held that review procedures such as

---

[102]   *Id.* at p. 5.

[103]   Rec. Doc. 32.

[104]   *Id.* at p. 10.

[105]   *Id.* at p. 12.

[106]   *Id.*

those at issue in this case "exclude from arbitration grievances challenging decisions made by a plan administrator."[107]

### a. Conflict with the CBA

Noranda argues that "there is no conflict between the Noranda Pension Plan and the [CBA]," because the arbitration clause present in Article 10 of the CBA "only applies to those disputes that fall within the scope of Article 10," and because the SPD and Pension Plan "clearly and unambiguously exempt pension disputes from application of Article 10 of the [CBA]," just like the agreements at issue in *Amoco*.[108]

### b. Past Practice

Noranda contends that "the parties' past practice confirms that the pension dispute is not arbitrable," because many USW members have applied for and commenced pension benefits "in accordance with the procedures established in the Noranda SPD and Pension Plan," demonstrating that the present litigation is an "attempt at forum shopping."[109]

### 2. Timeliness

As it did in opposition to USW's motion, Noranda contends that "[USW's] claim is untimely," because a six-month limitations period applies to actions to compel arbitration pursuant to Section 301 of the LMRA and because Noranda refused to arbitrate in its April 4, 2012 letter, which preceded the initiation of the present litigation by more than six months.[110]

---

[107] *Id.* at pp. 13–14.

[108] *Id.* at p. 15.

[109] *Id.* at p. 16.

[110] *Id.* at pp. 18–19.

### 3.    Fees

Noranda also urges the Court to award attorney's fees to it "pursuant to the Court's inherent equitable powers," because, "[a]lthough there is no statutory right to attorney's fees to a prevailing party under Section 301 of the [LMRA]," the Fifth Circuit has held that parties may recover attorney's fees in Section 301 actions, and district courts have awarded fees "when an opponent has acted in bad faith."[111]

Here, Noranda asserts, an award of fees is warranted because USW "entirely ignores the well-established and longstanding Fifth Circuit precedent that controls the outcome of this case," and represents that no express provision of the CBA excludes the present dispute from arbitration, notwithstanding "the fact that the Pension Plan—which has been incorporated by reference in the [CBA]—includes language that was identical in all material respects to the plan that had been incorporated into the *Amoco* collective bargaining agreement."[112] Fees are also warranted here, Noranda asserts, because USW's "suggestion that this case has anything to do with the 'seniority' provisions of the [CBA] is grossly misleading," while its "continuous characterization of this case as a 'seniority dispute' verges on fraudulent."[113] Additionally, Noranda asserts, fees are appropriate here because USW argues that none of Noranda's cited cases control the present issue, and because USW makes the "misleading" argument that the plan at issue in *Amoco* "did not have language that was similar to that found in Section 11.17 of the Pension Plan."[114] According to Noranda, "it is not

---

[111]   *Id.* at p. 19.

[112]   *Id.* at p. 20.

[113]   *Id.*

[114]   *Id.* at pp. 21–22.

possible to determine [from the *Amoco* decision], whether language similar to Section 11.17 was included within the respective plans."[115] Nonetheless, Noranda asserts, "[i]t is just as likely that similar language was included within such plans," but since "there was clearly no conflict" between the plan and the CBA, "it was unnecessary to address such language within the court's opinion."[116]

"Finally," Noranda argues, "[USW] has engaged in nothing but vexatious litigation practices" by refusing to "stipulate to the language of both the Labor Agreement and the Plan and further stipulate that there is no material fact genuinely in dispute," thereby "unnecessarily creating a dispute involving such documents."[117] According to Noranda, "[t]he only reason for engaging in these practices is to increase the costs of litigating what should otherwise have been a relatively straightforward matter," requiring the parties to undertake efforts to authenticate "many exhibits which are likely identical."[118]

### E.    *USW's Opposition*[119]

#### 1.    **Exclusion from Arbitration**

In opposition, USW asserts, as it did in its motion for summary judgment, that "no express provision excludes" the present dispute from arbitration, and that Noranda has not adduced the "'most forceful' evidence" that the parties did not intend to arbitrate the instant dispute.[120] USW maintains that although Noranda relies on Section 11.08 of the Plan, the language in that Section is

---

[115] *Id.* at p. 22.

[116] *Id.* at p. 22.

[117] *Id.*

[118] *Id.*

[119] Rec. Doc. 37.

[120] *Id.* at p. 4.

limited by Section 11.17, which provides that Article 11 "shall not apply to the extent any such provision conflicts with an agreement with a collective bargaining unit."[121] USW asserts, as it did in its motion for summary judgment, that the instant dispute arises from Article 9(D)(1)(c) of the CBA, and that the dispute is consequently subject to the CBA's arbitration provision, triggering Section 11.17 of the Plan, which operates to prevent Section 11.08 from being viewed as an "express exclusion of grievances." [122]

### a. Conflict with the CBA

USW asserts that its position is "entirely compatible" with the Fifth Circuit's *Amoco* decision and other cases cited by Noranda because "no provision remotely similar to Section 11.17 was present" in that case.[123] Therefore, USW argues, *Amoco* does not support Noranda's assertion that "there is no 'conflict' between Section 11.08 [of the Plan] and Article 10 of the CBA because the issue never arose in *Amoco*."[124]

### b. Arguments on the Merits

USW contends that "[t]he parties expressly agreed that the role of the arbitrator would be to 'interpret, apply or determine compliance with the provisions of this Agreement, Memoranda, Supplements, etc.," and that this contractual term "empowers the arbitrator to consider the Plan and to examine how its provisions regarding Vesting Service and Benefit Service interact with the language in Article 9(D)(1)(c) of the CBA[.]"[125] Consequently, USW asserts, Noranda's arguments

---

[121] *Id.* at pp. 4–5.

[122] *Id.* at p. 5.

[123] *Id.* at pp. 5–7.

[124] *Id.* at p. 7.

[125] *Id.* at p. 8.

regarding whether it violated Article 9(D)(1)(c) are improper here, since "it is not for the Court to assess the merits of the grievance."[126] Rather, USW argues, the only question before the Court "is whether any possible interpretation of the parties' agreements would allow" the grievance to be submitted to arbitration.[127] USW contends that Section 11.17 of the Plan "means the answer [to this question] is clearly 'yes.'"[128]

### c.    Past Practice

USW further asserts that Noranda's "past practice" arguments are "without merit," because the fact that Haydel applied for benefits according to the Plan's procedures "proves nothing regarding the arbitrability of the grievance," since the Plan's application process "does not conflict with the CBA" and therefore "does not trigger Section 11.17."[129] Further, USW argues, it is a "non sequitur"that Noranda employees "have retired without filing a grievance."[130] Therefore, USW contends, Noranda "has failed to carry its burden of presenting 'most forceful' evidence of the parties' intention to exclude this type of grievance from the CBA's broad arbitration provisions," and has therefore not "give[n] rise to 'positive assurance' that the parties intended" to exclude grievances over this "seniority/benefits issue" from arbitration.[131] Therefore, USW contends, "the presumption of arbitrability survives" and "the Union is entitled to arbitrate" this dispute.[132]

---

[126] *Id.*

[127] *Id.*

[128] *Id.*

[129] *Id.* at pp. 8–9.

[130] *Id.* at p. 9.

[131] *Id.*

[132] *Id.*

### 2.      Timeliness

USW argues that its July 12, 2013 complaint is timely, because Noranda did not unequivocally refuse to arbitrate until January 16, 2013.[133] According to USW, Noranda's April 4, 2012 letter "did not touch upon how the Union or Haydel were to address disputes over Haydel's pension service credit," and did not state "that disputes relating to pension service credit were not subject to the CBA's grievance and arbitration procedures."[134] Indeed, USW contends, by contending in its April 4, 2012 letter "Article 2 of the Plan addressed [USW's] concerns" and that "Article 19 incorporat[es] the Plan into the CBA, Noranda's took a position that was "entirely consistent with a position that the CBA's grievance-arbitration provisions would govern the resolution of the dispute over Haydel's pension service credit," since  Article 19 incorporates the plan into the CBA, while Article 2 could "provide the rules for calculating his pension service credit" without undermining the grievance arbitration procedures set forth in the CBA.[135]

Furthermore,  according to USW, Noranda's counsel, in a letter dated February 1, 2013, twice noted that Noranda "articulated its position that [this dispute] . . . was not substantively arbitrable" in its January 16, 2013 meeting, but did not indicate that the April 4, 2012 letter also amounted to a refusal to arbitrate.[136] According to Noranda, a subsequent letter from Noranda's Human Resources Manager Reggie McDade likewise omitted any mention of the April 4, 2012 letter.[137]

---

[133] *Id.* at pp. 9–10.

[134] *Id.* at p. 10.

[135] *Id.* at pp. 10–11.

[136] *Id.* at p. 11.

[137] *Id.*

### 3. Fees

Finally, USW contends that "[Noranda] is not entitled to attorney's fees," since, although attorney's fees are available in cases arising under 29 U.S.C. § 185 "where a party acted frivolously or in bad faith," USW "has litigated in good faith here."[138] USW contends that, despite Noranda's assertions to the contrary, the present case is not "directly controlled by [the Fifth Circuit's] *Amoco* [decision]," since the language at issue in *Amoco* "did not include anything remotely similar to Section 11.17 of the Plan."[139] According to USW, the Court "should not pay heed to Noranda's unfounded speculation that it is 'likely that similar language was included" in the plan at issue in *Amoco*.[140]

USW maintains that the present dispute is not a "'fraudulent' attempt at 'bootstrapping,' but rather raises the issue of whether the Company violated Article 9(D)(1)(c), which provides that "employees injured while on duty for which Worker's Compensation is payable shall accumulate credit for continuous service until the termination of the period for which their statutory compensation is payable."[141] USW contends that the Plan "uses an employee's period of 'Continuous Service' to calculate benefits," and that "[t]he arbitrator will be called upon to determine whether the Company violated the CBA's definition of continuous service by not giving Haydel credit for pension purposes for the time he was receiving workers' compensation."[142]

---

[138] *Id.* at p. 12.

[139] *Id.*

[140] *Id.*

[141] *Id.* at pp. 12–13.

[142] *Id.* at pp. 13–14.

Finally, USW maintains, "this Court did not order the parties to stipulate to anything."[143] Rather, USW maintains, Noranda proposed to "convert [its] motion to dismiss into one for summary judgment and to prevent any further briefing," which proposals USW declined.[144] USW argues that it "should not be penalized for acting within its rights to file its own motion for summary judgment and supporting material."[145]

## F.   Noranda's Reply[146]

### 1.   Exclusion from Arbitration

#### a.   Conflict with the CBA

In further support of its motion, Noranda asserts that "pension disputes are specifically excluded from arbitration," since, pursuant to *Amoco*, the Plan "was free to set its own dispute resolution procedure with respect to pension dispute without being in conflict with the arbitration provision of the [CBA]."[147] Noranda contends that the CBA does not "prohibit[] the parties from agreeing to have a [P]lan fiduciary resolve disputes that arise under the [Plan]," and that no language in the CBA "provides that a determination by any such fiduciary cannot be final and binding on all parties."[148] Indeed, Noranda contends, "the arbitration provision does not reference or in any way implicate the [Plan]," and the CBA only references the Plan and the SBD to incorporate them into

---

[143] *Id.* at p. 13.

[144] *Id.*

[145] *Id.*

[146] Rec. Doc. 44.

[147] *Id.* at pp. 2–3.

[148] *Id.* at p. 3.

28

the CBA.[149] Therefore, applying *Amoco* here, there is no conflict between the Plan and the CBA, such that Section 11.17 of the Plan applies.[150] Noranda also avers that the SPD, which is incorporated by reference into the CBA, "vests the Plan Administrator" with authority to make pension eligibility and amount determinations, and provides that the Plan Administrator's decisions are "final and binding on all parties."[151]

### b.    Article 9

Noranda argues that Article 9 of the CBA "does not affect the arbitrability of the pension dispute," and that "even if Article 9 is somehow relevant to the calculation of a participant's pension," the Plan and the SPD give the Plan Administrator "sole discretion to make Article 9 seniority determinations in connection with a pension dispute."[152]

### 2.    Timeliness

Noranda also maintains that USW's complaint is untimely, since Noranda "specifically stated that the dispute was governed by the terms of the Pension Plan" in its April 4, 2012 letter, which Plan "obviously excludes arbitration for grievances concerning such subject matter," making the letter an "unequivocal refusal to arbitrate."[153] Noranda further reavers that its communication with USW subsequent to the April 4, 2012 letter does not amount to an implicit admission that the April 4, 2012 letter "was not a refusal to arbitrate."[154]

---

[149] *Id.*

[150] *Id.* at pp. 3–4.

[151] *Id.* at p. 4.

[152] *Id.* at p. 5.

[153] *Id.* at pp. 6–7.

[154] *Id.* at p. 7.

### 3.    Fees

Finally, Noranda contends that it is entitled to fees because USW "continues to litigate this matter in bad faith by misrepresenting the terms of Noranda's proposed stipulation," and by "suggesting that the proposed stipulation 'would prevent any further briefing.'"[155] Noranda contends that the proposed stipulation "would have done nothing of the sort," and that if USW "believed the proposed stipulation was inadequate, it should have heeded the Court's invitation to stipulate as to those facts and documents over which there was no dispute."[156] Noranda maintains that "the parties' briefing has demonstrated" that "there is no dispute as to any of the documents or any material facts at issue in this case," making USW's actions "vexatious," having the effect of "substantially increas[ing] the cost of litigating this dispute," warranting a penalty.[157]

## III. Law and Analysis

### A.    *Legal Standard: Summary Judgment*

Both USW and Noranda seek summary judgment pursuant to Federal Rule of Civil Procedure 56. That rule provides, in part, that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[158]

Applying Federal Rule of Civil Procedure 56,

---

[155]  *Id.*

[156]  *Id.*

[157]  *Id.* at p. 8.

[158]  FED. R. CIV. P. 56(a).

A genuine dispute as to a material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. [T]his court construes all facts and inferences in the light most favorable to the nonmoving party. But [s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence.[159]

Since the parties filed and briefed their respective motions for summary judgment, they have jointly represented to the Court that "there are no material facts . . . genuinely in dispute," meaning that this case "presents a pure question of law."[160] Accordingly, it appears that each party urges the Court to find, pursuant to Federal Rule of Civil Procedure 56(a), that it is "entitled to judgment as a matter of law."[161]

## B.    Presumption of Arbitrability

In this case, the parties dispute whether an arbitration provision contained in the CBA applies to the present dispute. Specifically, USW maintains that the arbitration provision at issue here is "broad"[162] and that no express provision or other "most forceful evidence" suggests that the scope of the provision does not extend to the present dispute,[163] while Noranda contends the SPD and Plan "clearly and unambiguously exempt pension disputes" from the arbitration clause at issue here.[164]

---

[159] *Rogers v. Bromac Title Serv.*, 755 F.3d 347, 350 (5th Cir. 2014) (citations and internal quotation marks omitted).

[160] Rec. Doc. 50 at p. 12.

[161] FED. R. CIV. P. 56(a).

[162] Rec. Doc. 31–1 at pp. 8–9.

[163] *Id.* at pp. 8–11.

[164] Rec. Doc. 32–1 at p. 15.

## 1.      Legal Standard

It is undisputed that the present case arises under Section 301 of the Labor Management

Relations Act.[165] That statute, as codified at 28 U.S.C. § 185(a), provides that:

> Suits for violation of contracts between an employer and a labor organization
> representing employees in an industry affecting commerce as defined in this chapter,
> or between any such labor organizations, may be brought in any district court of the
> United States having jurisdiction of the parties, without respect to the amount in
> controversy or without regard to the citizenship of the parties.

In *AT&T Technologies v. Communications Workers of America*, the United States Supreme

Court addressed an action to compel arbitration pursuant to Section 301 of the LMRA, and set forth

the general principles governing the interpretation of labor-management contracts containing

arbitration clauses. There, the parties disputed whether the company violated an article of their CBA

by laying off a number of workers.[166] The union, in turn, sought to arbitrate the issue, and the

company refused to do so, prompting the union to file suit to compel arbitration.[167] The district court

held that it was "arguable" that the union's interpretation of the contract required arbitration, and

that the issue of arbitrability should therefore be resolved by the arbitrator, and the United States

Court of Appeals for the Seventh Circuit affirmed, holding that, in some circumstances, district

courts should require the parties to arbitrate the issue of arbitration itself.[168]

The Supreme Court reversed. In doing so, it set forth the general principles governing  the

interpretation of arbitration clauses in labor-management contracts. First, the Court instructed that

---

[165] *See, e.g.* Rec. Doc. 41 at p. 21 (asserting that USW's action is untimely pursuant to Section 301); Rec. Doc.
31–1 at p. 14 (contending that this case arises under 29 U.S.C. § 185, the statute codifying Section 301 of the LMRA).

[166] 475 U.S. 643, 645–56 (1986).

[167] *Id.* at 646.

[168] *Id.* at 647.

"arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[169] Second, the Court concluded that the "threshold question" of arbitrability—that is, "whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance"—"is undeniably an issue for judicial determination" if not "clearly and unmistakably" made subject to determination by the arbitrator.[170]

Third, the Court cautioned that courts are "not to rule on the potential merits on the underlying claims," even those claims that appear to be "frivolous," when "deciding whether the parties have agreed to submit a particular grievance to arbitration."[171]

Fourth, the Court held that "where [a] contract contains an arbitration clause, there is a presumption of arbitrability in the sense that . . . [arbitration] should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."[172] Finally, the Court held that the presumption of arbitrability is "particularly applicable" in cases (such as the one before it) where the arbitration clause at issue is "broad."[173]

Applying these principles to the dispute before it, the Court concluded that the Seventh Circuit had "erred in ordering the parties to arbitrate the arbitrability question," and remanded the

---

[169] *Id.* at 648 (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

[170] *Id.* at 649 (citing, among other cases, *Warrior & Gulf*, 363 U.S. at 583–83).

[171] *Id.* at 649–50. (citations omitted). *Accord Paper, Allied-Indus., Chem. and Energy Workers Intern. Union Local No. 4-2001 v. ExxonMobil Refining & Supply Co.*, 449 F.3d 616, 619 (5th Cir. 2006).

[172] *Id.* at 650 (citing, among other cases, *Warrior & Gulf*, 363 U.S. at 582–83). *Accord ExxonMobil*, 449 F.3d at 620.

[173] *Id.* The arbitration provision at issue in *AT&T* stated that the parties were to arbitrate "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder." *Id.*

case for consideration of whether "because of express exclusion or other forceful evidence, the dispute over the interpretation of . . . the layoff provision is not subject to the arbitration clause."[174]

Consistent with *AT&T*, the United States Court of Appeals for the Fifth Circuit instructs that courts play a  "very limited [role] when deciding issues of arbitrability."[175] Specifically, in *Paper, Allied-Industrial, Chemical and Energy Workers Intern. Union Local No. 4-2001 v. ExxonMobil Refining & Supply Co.*, the Fifth Circuit held that the function of the Court in this context "is to decide whether the claim asserted is the type of claim the parties have agreed to arbitrate."[176] The Court is not to "consider the merits of the claim," but rather must confine its inquiry to  "ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract."[177]  If the presumption of arbitrability applies, the Fifth Circuit instructs, it may only be rebutted "if the party resisting arbitration shows either (1) the existence of an express provision excluding the grievance from arbitration or (2) the 'most forceful evidence' of a purpose to exclude the claim from arbitration."[178] In interpreting an arbitration agreement, the "ordinary rules of construction" apply, and extrinsic evidence is only to be considered "where the contract language is ambiguous as to arbitrability."[179]

---

[174] *Id.* at 651–52.

[175] *ExxonMobil*, 449 F.3d at 619.

[176] *Id.*

[177] *Id.*

[178] *Id.*

[179] *Id.*

### 2.      Analysis

USW maintains that "the presumption of arbitrability applies here because the CBA contains a broad arbitration provision" from which the present dispute is not excluded. Noranda counters that "even if there is a presumption of arbitrability, that presumption gives way when there is an express provision excluding a particular grievance from arbitration or the most forceful evidence of a purpose to exclude the claim from arbitration."[180]

Applying *AT&T* and *ExxonMobil* here, the Court now turns to the terms of the parties' agreement to determine whether an agreement to arbitrate exists. Here, Article 10(A) of the CBA, the text of which is undisputed by the parties,[181] states as follows:

> Should any differences arise between the Company and the Union as to the meaning or application of the provisions of this Agreement, or as to any question relating to the wages, hours of work, or other conditions of employment of any employee, the same shall be disposed of in accordance with the provisions of this Article.[182]

Second, Article 10(C) sets forth the grievance procedure and provides, at "Step 5" that grievances may be appealed to "an impartial arbitrator whose decision will be final and binding on all the parties," and who "shall have jurisdiction and authority only to interpret, apply, or determine compliance with the provisions of this Agreement, Memoranda, Supplements, etc., insofar as shall

---

[180]   Rec. Doc. 31 at p. 8; Rec. Doc 41 at p. 8. Although Noranda qualifies its argument regarding the presumption of arbitrability with the phrase "even if," it does not affirmatively argue that the presumption of arbitrability is inoperative here.

[181]   Rec. Doc. 31–1 at p. 2 ("7. Article 10 of the CBA outlines the grievance and arbitration procedure for resolving disputes between the USW and the Company and states that '[s]hould any differences arise between the Company and the Union as to the meaning or application of the provisions of this Agreement, or as to any question relating to the wages, hours of work, or other conditions of employment of any employee, the same shall be disposed of in accordance with the provisions in this Article."); Rec. Doc. 41–1 at p. 2 ("Noranda admits that Plaintiff has accurately quoted the passage of the Labor Agreement referenced in paragraph [] 7 . . . of its Statement of Undisputed Material Facts. Noranda further states that the terms of the Labor Agreement speak for themselves.").

[182]   Rec. Doc. 31–5 at p. 57.

be necessary to the determination of grievances appealed to the Arbitrator."[183] The text of this Article is also undisputed by the parties.[184]

In light of these undisputed contractual terms, the Court finds that the CBA's grievance procedure contains an arbitration provision. Moreover, here, as in *AT&T*, the scope of the provision is broad. In *AT&T*, the arbitration clause covered "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder."[185] Here, disputes about "the meaning or application of the provisions of this Agreement" and "wages, hours of work, or other conditions of employment" are covered by the grievance procedure, which includes the arbitration provision. Therefore, pursuant to *AT&T*, the presumption of arbitrability applies here, and USW's motion will be denied only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[186] The presumption of arbitrability may only be rebutted if Noranda shows "(1) the existence of an express provision excluding the grievance from arbitration or (2) the 'most forceful evidence' of a purpose to exclude the claim from arbitration."[187] In this inquiry, the Court will resolve doubts in favor of coverage.[188]

---

[183] *Id.* at p. 59.

[184] Rec. Doc. 31–2 at p. 2 ("8. The fifth step of the CBA grievance and arbitration procedure is submission of the dispute to an impartial arbitrator 'whose decision shall be final and binding on the parties. 9. Pursuant to the CBA, the parties have agreed to grant the arbitrator authority 'to intepret, apply, or determine compliance with the provisions of this AGREEMENT, memoranda, supplements, etc., insofar as shall be necessary to the determination of grievances appealed to the Arbitrator.'"); Rec. Doc. 41–1 at p. 2 ("Noranda admits that Plaintiff has accurately quoted the Labor Agreement passages referenced in paragraph[] . . . 8 . . . of its Statement of Undisputed Material Facts. Noranda further states that the terms of the Labor Agreement speak for themselves.").

[185] 475 U.S. at 650.

[186] *Id.* at 650.

[187] *ExxonMobil*, 449 F.3d at 620. *See also AT&T*, 475 U.S. at 650.

[188] *ExxonMobil*, 449 F.3d at 619. *See also AT&T*, 475 U.S. at 650.

### C.    *Exclusion from Arbitration*

### 1.    **Express Provision**

USW maintains that "no express provision" of the CBA "excludes the [present dispute] from arbitration," and further contends that Section 11.17 of the Plan requires that any sections of the Plan that conflict with the CBA, including its arbitration provision, must give way to the terms of the CBA.[189]   Noranda counters that the SPD and Article 11.08 of the Plan "expressly exclude" from arbitration "disputes involving the [Plan],"[190] pursuant to the Fifth Circuit's *Amoco* decision.[191] USW contends that *Amoco* does not control here because the agreement at issue in that case did not contain a term resembling Section 11.17 of the Plan,[192] while Noranda responds that "[t]here is no material difference" between the terms at issue here and those at issue in *Amoco*.[193] The Court will therefore initially consider whether *Amoco* controls here.

### a.    *Amoco* **Decision**

### i.    **Law**

In *Amoco*, a union sued to compel the arbitration of several grievances related to the company's alleged denial of sick pay benefits, and both parties moved for summary judgment.[194] Noting that the "sole issue" before it was "whether the [company] breached the [CBA] in refusing

---

[189]   Rec. Doc. 31–1 at pp. 9--11.

[190]   Rec. Doc. 41 at pp. 9–10.

[191]   *See* Rec. Doc. 41 at p. 9 (citing *Amoco*, 589 F.2d 162 (5th Cir. 1979) (per curiam), and contending that the decision is "definitive"); Rec. Doc. 40 at p. 2 (maintaining that "*Amoco* does not control").

[192]   Rec. Doc. 31–1 at p. 11.

[193]   Rec. Doc. 41 at p. 10.

[194]   *Amoco*, 589 F.2d at 163.

to arbitrate," the court[195] began its analysis by summarizing and quoting the relevant terms of the

CBA and Disability Benefits Plan, as follows:

> Article XVI, ss 2 and 3, are the grievance and arbitration provisions of the Agreement. They present not unusual steps for consideration of the grievance leading to arbitration for the selection of arbitrators and the arbitration procedure.
>
> Article VIII of the Agreement provides for the payment of sickness and disability benefits as follows:
>
> > "Benefits with respect to sickness and disability shall be payable In [sic] accordance with the Company's Sickness and Disability Benefits Plan as presently in effect except that an employee will be paid holiday pay in place of sick leave pay for a holiday falling on a normally scheduled day of work, but which normally would not have been worked by the employee."
>
> Section IX of the Disability Benefits Plan (Plan) which is referred to in the Agreement states:
>
> > "The decision of the Board of Directors of the Company on any matter concerning the administration of this plan as a whole or as applied to any specific case Shall be final and the Board reserves the right to interpret, apply, amend or revoke this Plan at any time."[196]

Construing these terms, the court reasoned that "there appears to be no ambiguity as to the

intent of the Agreement to exclude grievances dealing with sickness and disability benefits from

arbitration," since the CBA incorporated the Plan by reference, and "Section IX of the Plan

unequivocally states that the Board of Directors of the Company (Board) is to be the final decision

maker in matters concerning administration of the Plan."[197]

---

[195]   In *Amoco*, the Fifth Circuit affirmed the judgment of the district court "on the basis of the Memorandum and Order entered" by the district judge, which opinion it appended to its Order. *Id.*

[196]   *Id.*

[197]   *Id.* at 163–64.

38

Addressing the union's argument that "there is no express exclusion of sick pay benefits from arbitration in the [CBA]," the court reasoned that Section IX of the Plan, incorporated into the agreement by Article VIII of the CBA, "does specifically exclude sick pay benefits from arbitration," because it "directly states that the Board reserves the right to interpret and apply the Plan, and that the decision of the Board will be final," making it "clear" that "questions concerning sickness and disability benefits should be presented to the Board," rather than to an arbitrator.[198] "To hold otherwise," the court held, "would be to render Article VII of the Agreement and Section IX of the Plan totally meaningless."[199] On this basis, the court held that the disputes regarding sick pay benefits are to be resolved using the procedures set forth in Section IX of the Disability Benefits Plan, not arbitration, and that the company was therefore entitled to summary judgment.[200]

### ii.    Analysis

To determine whether *Amoco* controls the present issue, the Court will begin, as the court did in *Amoco*, with the terms of the contract. First, as noted above, it is undisputed that the CBA contains a broad arbitration provision. It is also undisputed that Article 19 of the CBA incorporates the Plan into the CBA by reference.[201] That Article provides:

> The Defined Benefit Pension, Defined Contribution, 401(k) Retirement Savings Plan, VEBA and Supplemental Unemployment Benefits Programs shall be set forth in a booklet, titled Job and Income Security Program dated October 1, 2005 and such

---

[198] *Id.* at 164.

[199] *Id.*

[200] *Id.*

[201] Rec. Doc. 31–2 at p. 3 (stating that Article 19 "incorporates the Plan into the CBA"); Rec. Doc. 41 at p. 10 (citing Article 19 and noting that the CBA "incorporates by reference the terms of the benefits plan").

booklet is incorporated herein and made a part of this 2005 Labor Agreement by such reference.[202]

Additionally, Section 11.08 of the Plan states that Plan fiduciaries "shall have absolute discretionary authority," and that fiduciaries' decisions "shall be final, conclusive, and binding on all parties and persons affected thereby."[203] The text of this Article is undisputed.[204]

Finally, Section 11.17 of the Plan provides that "[t]he provisions of this Article 11 shall not apply to the extent that any such provision conflicts with an agreement with a collective bargaining unit."[205] The text of this Article is undisputed.[206]

Comparing the contractual language at issue in *Amoco* to the contractual language at issue here, the Court finds significant parallels. First, it is undisputed that Article 19 of the CBA at issue here incorporates by reference the terms set forth in the Plan. In this respect, the CBA resembles the CBA at issue in *Amoco*, which likewise incorporated by reference the terms of its Disability Benefits Plan.[207] Second, the Plan at issue here, at Section 11.08, vests in Plan fiduciaries "absolute discretionary authority," and provides that decisions made by fiduciaries "shall be final, conclusive,

---

[202]   *Id.* at p. 86.

[203]   Rec. Doc. 31–5 at p. 105.

[204]   Rec. Doc. 31–2 at p. 3 ("12. The Plan contains Article 11, which establishes, among other things, that Plan fiduciaries shall have 'absolute discretionary authority' in administering the plan and that decisions made by those fiduciaries 'shall be final conclusive and binding on all parties and persons affected thereby."); Rec. Doc. 41–1 at p. 1 ("Noranda admits the statements made by Plaintiff in paragraph[] 12 . . . of its Statement of Undisputed Material Facts.").

[205]   Rec. Doc. 31–9 at p. 113.

[206]   Rec. Doc. 31–2 at p. 3 ("13. Section 11.17 of the Plan states that "[t]he provisions of Article 11 shall not apply to the extent any such provision conflicts with an agreement with a collective bargaining unit."); Rec. Doc. 41–1 at p. 2 ("Noranda admits that Plaintiff has accurately quoted the passage of the Pension Plan referenced in paragraph 13 of its Statement of Undisputed Material Facts except that the words 'Article 11' contained in the quoted passage should be preceded by the word 'this.' Noranda further states that the terms of the Pension Plan speak for themselves.").

[207]   589 F.2d at 164.

and binding on all parties and persons affected thereby."[208] In this way, it is analogous to the Disability Benefits Plan at issue in *Amoco*, which vested broad authority in the company's Board of Directors.[209]

In *Amoco*, the court found terms that specifically excluded sick pay disputes from arbitration, and declined to adopt an interpretation of those terms that rendered them "totally meaningless."[210] Likewise here, it is necessary to determine the meaning of similar language, insofar as that language relates to the scope of the CBA's arbitration clause. USW contends that the contractual provisions at issue here are distinguishable from those in *Amoco*, since the Court in *Amoco* did not discuss any language comparable to Section 11.17 of the Plan.[211]

On this point, a basic principle of contractual interpretation is instructive. The RESTATEMENT (SECOND) OF CONTRACTS[212] provides, at Section 203, that: "[i]n the interpretation of a promise or agreement or a term thereof . . . an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."[213] Stated differently, courts must "honor the presumption that parties to a contract

---

[208] Noranda notes that the Plan at issue here "goes even further" than the plan at issue in *Amoco* in authorizing review of Plan determinations in court. Rec. Doc. 41 at p. 11.

[209] 589 F.2d at 164.

[210] *Id.* ("The language in Section IX of the Plan, which makes the Board's decision final in sickness and disability matters, obviously excludes arbitration for grievances concerning such subject matter. To hold otherwise would be to render Article VIII of the Agreement and Section IX of the Plan totally meaningless.").

[211] Rec. Doc. 31–1 at p. 11.

[212] The Fifth Circuit has employed the RESTATEMENT (SECOND) OF CONTRACTS to interpret the scope of arbitration provisions in labor-management CBAs. *See, e.g. Baton Rouge Oil and Chemical Workers Union v. ExxonMobil Corp.*, 589 F.3d 373, 377 (5th Cir. 2002). This Court will likewise do so here.

[213] RESTATEMENT (SECOND) OF CONTRACTS § 203(a).

41

intend every clause to have some effect."[214]  Here, the grievance procedures set forth in Article 10 of the CBA are different from the benefit determination procedures set forth in the Plan. To the extent that the procedures "conflict," as USW suggests they do,[215] Section 11.17 of the Plan requires the Plan's procedures to give way. Accordingly, the issue before the Court is very much like the issue present in *Amoco*, in that it calls upon the Court to interpret the scope of an arbitration provision in a manner that is consistent with, and that gives effect to, all of the relevant contractual terms.

Although the Court in *Amoco* and courts in other cases cited by Noranda did not discuss any contractual term resembling Section 11.17,[216] this term only becomes operative if there is a conflict between a provision in Article 11 of the Plan and the CBA. Applying the interpretive principles set forth above to the CBA and to the Plan, it is possible to give effect to both Article 10 of the CBA and Article 11 of the Plan without triggering Section11.17. Indeed, if the relevant provisions are viewed as complementary parts of a bargained-for whole, they do not conflict at all: the Plan expressly establishes distinct procedures governing the pension determinations it covers (in essence, those subject to determination pursuant to Section 11.08), and Article 10 of the CBA sets forth procedures

---

[214]   *Baton Rouge Oil and Chemical Workers Union*, 289 F.3d at 377 (citations omitted).

[215]   According to USW, Section 11.17 of the Plan requires that any sections of the Plan that conflict with the CBA, including Section 11.08, give way to the CBA, precluding a finding that Section 11.08 of the Plan expressly excludes pension disputes from arbitration. Rec. Doc. 31–1 at pp. 9-11.

[216]   In support of the proposition that "[t]he Fifth Circuit is not alone in holding that these types of review procedures expressly exclude from arbitration grievances challenging decisions made be a plan administrator," Noranda cites *Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10 v. Waukesha Engine Div., Dresser Indus., Inc.*, 17 F.3d 196, 198 (7th Cir. 1994). In that decision, as in *Amoco*, the Seventh Circuit concluded that the dispute resolution procedures contained in a benefits document incorporated by reference into a CBA indicated that the parties intended to exclude the benefits dispute at issue from arbitration. *Id.* There, however, as in *Amoco*, the court did not discuss any language comparable to Section 11.17. *See also Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 262–63 (6th Cir. 2010) (finding language excluding pension disputes from arbitration, but discussing no language like Section 11.17); *United Steelworkers of Am., AFL-CIO-CLC v. Commonwealth Aluminum Corp.*, 162 F.3d 447, 451–52 (6th Cir. 1998) (same); *PDG Chemical Inc. v. Oil, Chemical and Atomic Workers Intern. Union*, 164 F.Supp.2d 856, 861–64 (E.D. Tex. 2001) (same).

governing other disputes. Since this interpretation avoids a conflict that would render Article 11 devoid of meaning in the event of a dispute like the present one, it is consistent with the interpretive principles set forth above. USW's interpretation, on the other hand, would essentially render the Plan's procedures inapplicable in the event of a dispute over a determination made pursuant to it, which is contrary to the principles noted above. Therefore, when interpreting the CBA and the Plan to give effect to each, there is no meaningful difference between the terms at issue here and the terms at issue in *Amoco*.

###### b.    Express Exclusion

In deciding the present motion, the Court's task "is to decide whether the claim asserted is the type of claim the parties have agreed to arbitrate."[217] In doing so, the Court determines "whether the party seeking arbitration is making a claim which on its face is governed by the contract."[218] Here, the Plan expressly establishes its own benefits determination and dispute resolution procedures. These procedures are distinct from the procedures set forth in Article 10 of the CBA. Having determined that the Plan expressly excludes from arbitration those disputes arising from the Plan, the Court now turns to whether the present dispute is governed by the arbitration provision.

Although the parties disagree about whether the Plan or the CBA supplies the rules governing the calculation of pension benefits, which is the underlying issue here,[219] it is nonetheless undisputed that this issue concerns a pension "under the [Plan]."[220] Noranda asserts that the United States Court

---

[217] *ExxonMobil*, 449 F.3d at 619.

[218] *Id.*

[219] USW alleges that Article 9(D)(1)(c) of the CBA governs, while Noranda contends that the Article 2 of the Plan does. Rec. Doc. 31–1 at p. 9; Rec. Doc. 41 at pp. 13–15.

[220] Rec. Doc. 31–2 at p. 2.

of Appeals for the Sixth Circuit's decision in *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.* "is directly on point" with the present issue, insofar as the court there found that the parties' agreements excluded from arbitration those disputes arising from a pension plan, and concluded that a grievance relating to seniority calculations for pension purposes was therefore excluded from arbitration.[221] In that case, the court construed a contractual structure much like the one at issue in *Amoco*: the CBA referenced the Pension Plan, and the Pension Plan, in turn, provided "a specific mechanism for resolving all grievances related to pension rights."[222]

Here, likewise, the Plan expressly provides its own procedures. These procedures, as noted above, are separate from the grievance procedure set forth in Article 10. Accordingly, since it is undisputed that the underlying issue here concerns benefits awarded under the Plan, "the claim asserted" is on its face governed by the Plan, and therefore is not "the type of claim the parties have agreed to arbitrate."[223]

### 2.     Most Forceful Evidence

As *ExxonMobil* instructs, a party may also rebut the presumption of arbitrability by adducing "(2) the 'most forceful evidence' of a purpose to exclude the claim from arbitration."[224] Without citing any authority, and without making clear its intent to rebut the presumption of arbitrability pursuant to this rule, Noranda asserts that "past practice confirms that the pension dispute is not

---

[221] Rec. Doc. 41 at pp. 15–17 (citing 626 F.3d 256 (6th Cir. 2010)).

[222] *Teamsters*, 626 F.3d at 262.

[223] *ExxonMobil*, 449 F.3d at 620.

[224] 449 F.3d at 620.

arbitrable," since other USW members have applied for, and commenced, pension benefits pursuant to the Plan.[225]

In *ExxonMobil*, the defendant company attempted to adduce past bargaining history as "most forceful evidence" that the dispute at issue was not arbitrable.[226] The Fifth Circuit rejected the attempt, holding that "evidence of bargaining experience can be introduced only where the contract language is ambiguous as to arbitrability," and concluding that the dispute at issue was "unambiguously arbitrable on its face," therefore precluding the introduction of bargaining evidence.[227]

Here, as in *ExxonMobil*, the terms of the contract resolve the present issue. Therefore, the Court need not resort to evidence outside the contract. Even if such evidence could properly be considered here, it is not clear to the Court how it is relevant to the issue before it—specifically, whether USW and Noranda agreed to arbitrate disputes relating to the Plan.

### 3. Arbitrability

The CBA contains a broad arbitration clause. Accordingly, the presumption of arbitrability applies here.[228] Noranda, however, has correctly indicated that the Plan expressly excludes[229] certain disputes, including the present one, from arbitration. Therefore, Noranda has rebutted the presumption of arbitrability, because the Court can say "with positive assurance that the arbitration

---

[225] Rec. Doc. 41 at p. 20.

[226] 449 F.3d at 620.

[227] *Id.*

[228] *See AT&T*, 475 U.S. at 650.

[229] *Id.*

clause is not susceptible of an interpretation that covers the asserted dispute."[230] Accordingly, because the relevant contractual language is not in dispute here, Noranda is entitled to judgment as a matter of law on this issue.

## D.    Timeliness

USW contends that its action is timely, "because Noranda first unequivocally refused to arbitrate on January 16, 2013," less than six months before the present action was filed.[231] Noranda contends that USW's action is untimely, because it unequivocally refused to arbitrate in a letter dated April 4, 2012.[232]

In *Aluminum, Brick and Glassworkers Intern. Union Local 674 v. A.P. Green Refractories, Inc.*, the Fifth Circuit held that "a suit to compel arbitration brought under Section 301 of the [LMRA] is governed by the six-month limitations period provided for in section 10(b) of the [LMRA]," which period begins to run "when one party clearly refuses to arbitrate the dispute."[233]

Applying these rules here, neither party disputes that Noranda indicated, in a letter dated April 4, 2012,  that the CBA "referred to the Plan documents and explained that Haydel's benefit was calculated using the 'service counting rules' enumerated in Article 2 of the Plan."[234] Noranda contends that the letter, in stating that the Plan governed the pension dispute, "necessarily meant that

---

[230]  *ExxonMobil*, 449 F.3d at 620.

[231]  Rec. Doc. 31–1 at p. 12.

[232]  Rec. Doc. 41 at pp. 21–22.

[233]  895 F.2d 1053, 1054–55 (5th Cir. 1990).

[234]  Rec. Doc. 31–2 at p. 4 ("16. By letter dated April 4, 2012, Noranda Retirement Specialist Doretta Maddox ("Maddox") responded to Delaneuville's inquiry regarding Haydel's pension benefit. Maddox's letter stated that the CBA referred to the Plan documents and explained that Haydel's benefit was calculating using the "Service Counting Rules" enumerated in Article 2 of the Plan"); Rec. Doc. 41–1 at p. 1 ("Noranda admits the statements made by Plaintiff in paragraph[] . . . 16 . . . of its Statement of Undisputed Material Facts.").

the determination was not controlled by the grievance procedure established in the [CBA]."[235] In support of this assertion, Noranda cites *Independent Coca-Cola Employees' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc.*, an unpublished (and therefore non-precedential) Fifth Circuit decision.[236] In that case, the court held that a letter sent by the company to the union amounted to a clear refusal to arbitrate because it stated that "a claim for wages or compensation is prescribed after three (3) years . . . [and] neither the Union nor Mr. Etienne have a viable cause of action at this time."[237] Reasoning that there is "no need for a party refusing to arbitrate to use that term (or any other talismanic words) to express its refusal to arbitrate," the court found "no doubt or equivocation" regarding arbitration in the company's letter or its subsequent conduct, and consequently concluded the letter triggered the running of the statute of limitations.[238]

Here, although *Coca-Cola* is not precedential, it appears to the Court that Noranda's April 4, 2012 letter is at least as unequivocal as the letter in *Coca-Cola*, in that it states that the Plan, and not the CBA, governs the underlying dispute. Since, as noted above, disputes arising from Plan determinations are governed by specific Plan provisions, and not Article 10 of the CBA, Noranda's April 4, 2012 letter amounted to a clear refusal to arbitrate. Accordingly, pursuant to *A.P. Green*, the

---

[235] Rec. Doc. 41 at p. 22.

[236] 114 Fed. App'x 137, 139 (5th Cir. 2004). 5TH CIR. R. 47.5.4 provides, in part, that "[u]npublished opinions issued on or after January 1, 1996 are not precedent, except under the doctrine of *res judicata*, collateral estoppel, or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)."

[237] *Id.* at 139; 141.

[238] *Id.* at 141–42.

April 4, 2012 letter triggered the running of the six-month statute of limitations. USW filed the present action on July 12, 2013.[239] Consequently, its action is untimely.

**E.     *Fees***

**1.     USW's Motion**

The parties dispute whether USW is entitled to an award of fees incurred in the present case. USW contends that it is entitled to fees because Article 10 of the CBA facially encompasses the present dispute, and because the April 2012 letter did not inform the union of its refusal to arbitrate.[240] Noranda's arguments to the contrary, USW asserts, are "frivolous," which warrants an award of fees.[241]

Noranda counters that USW is not entitled to an award of fees, because USW's "claims were brought in bad faith and are meritless," because USW "has pursued this litigation by using vexatious litigation practices," and because "the focus of [the] bad faith inquiry is not the actions precipitating the law suit, but the manner in which the litigation itself is conducted."[242]

**2.     Noranda's Motion**

Noranda also seeks an award of fees "pursuant to the Court's inherent equitable powers," because USW "entirely ignores the well-established and longstanding Fifth Circuit precedent that controls the outcome of this case," "misrepresent[s] the terms of the [Plan]," characterizes the underlying dispute here as one involving seniority, makes a "misleading" argument about *Amoco*,

---

[239] Rec. Doc. 1.

[240] Rec. Doc. 31–1 at pp. 15–16.

[241] *Id.*

[242] Rec. Doc. 41 at p. 24.

and "has engaged in nothing but vexatious litigation practices"  by refusing to "stipulate to the language of both the Labor Agreement and the Plan and further stipulate that there is no material fact genuinely in dispute," thereby "unnecessarily creating a dispute involving such documents."[243]

USW contends that "[Noranda] is not entitled to attorney's fees," since it "has litigated in good faith."[244] USW contends that the present case is not "directly controlled by [the Fifth Circuit's] *Amoco* [decision]," that its grievance relates to the CBA, and that it "should not be penalized for acting within its rights to file its own motion for summary judgment and supporting material."[245]

### 3.   Legal Standard

Although the "'American rule' ordinarily requires parties to shoulder their own counsel fees or other litigation expenses absent statutory or contractual authority for an alternative allocation,"[246] the Fifth Circuit instructs that "federal courts possess inherent power to assess attorney's fees and litigation costs when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons," warranting the assessment of fees for "punitive" purposes.[247] The standards governing the bad faith inquiry "are necessarily stringent," and do not permit the imposition of fees simply because a party has pursued "an aggressive litigation posture."[248] Rather, "[t]he essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant."

---

[243] Rec. Doc. 32–1 at pp. 19–22.

[244] Rec. Doc. 37 at p. 12.

[245] *Id.* at p. 13.

[246] *Batson v. Neal Spelce Assocs.*, 805 F.2d 546, 550 (5th Cir. 1986).

[247] *Id.*

[248] *Id.*

"Advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto."[249]

### 4.    Analysis

Applying these standards here, USW asserts that Noranda's positions regarding the arbitrability of this grievance and the April 4, 2012 letter are "frivolous." Likewise, Noranda contends that USW has ignored or misconstrued cases and mischaracterized the contractual language at issue here. Noranda also asserts that fees are warranted because USW refused to make certain stipulations.[250] Although the Court has determined that USW's positions are erroneous, the Fifth Circuit instructs that fees should not be awarded simply because a party pursues "unsuccessful" arguments or takes an aggressive litigation posture.[251] This is what the parties accuse each other of doing here. Therefore, neither party is entitled to an award of fees.

## IV. Conclusion

In the present case, USW seeks an order compelling Noranda to arbitrate its grievance regarding the calculation of Haydel's pension benefits. The text of the CBA at issue here is undisputed, and contains a broad arbitration provision that encompasses the present dispute, making the present dispute presumptively arbitrable. However, Noranda has pointed to express contractual terms excluding the present dispute from arbitration. Therefore, the Court can say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

---

[249] *Id.*

[250] The Court noted in its Order denying Noranda's motion to dismiss that "[I]f the parties stipulate to the language of both the Labor Agreement and the Plan and further stipulate that there is no material fact genuinely in dispute, the Court would reconsider the filing of the motion as a converted motion for summary judgment." Rec. Doc. 6 at p. 20 n. 118. No such stipulation was made here, nor was any such stipulation required.

[251] *Id.*

dispute."[252] Since no material facts are in dispute, Noranda is entitled to judgment as a matter of law on this point.

USW contends that its action is timely, because Noranda first clearly refused to arbitrate the present dispute in a meeting on January 16, 2013. In opposition, Noranda points to an April 4, 2012 letter, the relevant contents of which are undisputed, that asserts that the underlying dispute is governed by the Plan. Since disputes arising from the Plan are exempt from arbitration, Noranda's April 4, 2012 letter is a clear refusal to arbitrate. Accordingly, since no material facts are in dispute, Noranda is entitled to judgment as a matter of law on this point.

Finally, the parties assert that they are entitled to fees, but neither has pointed to any conduct that is capable of supporting an award of fees. Consequently, the Court will not award fees to either party. Accordingly,

**IT IS ORDERED** that USW's "Motion for Summary Judgment"[253] is **DENIED.**

**IT IS FURTHER ORDERED** that Noranda's "Motion for Summary Judgment"[254] is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that Noranda's "Motion for Summary Judgment"[255] is **GRANTED** to the extent that it urges the Court grant it judgment as a matter of law as to the issues of arbitrability and timeliness.

---

[252] *ExxonMobil*, 449 F.3d at 620.

[253] Rec. Doc. 31.

[254] Rec. Doc. 32.

[255] *Id.*

**IT IS FURTHER ORDERED** that Noranda's "Motion for Summary Judgment"[256] is **DENIED** to the extent that it seeks an award of attorney's fees.

**NEW ORLEANS, LOUISIANA**, this  27th  day of February, 2015.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[256] *Id.*

52